## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
BARBARA MCLAIN, on behalf of              *
herself and all others similarly situated,  *
                                          *   Civil Action No. 3:16-cv-00780
        Plaintiff,                        *
                                          *
        vs.                               *
                                          *
HEAD MERCANTILE CO., INC.                 *
                                          *
        Defendant.                        *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

## PLAINTIFF'S  RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Plaintiff  Barbara McLain ("Plaintiff") responds to the motion to dismiss  for lack of subject matter jurisdiction,  motion  to dismiss  for failure  to state a claim,  and motion  for summary judgment  filed by Defendant Head Mercantile  Co., Inc., ("Defendant")  under Federal Rules of Civil  Procedure  12(b)(1), 12(b)(6), and 56.  Doc. 16.

## I.    Introduction.

This case is about a consumer  who received  a collection  letter that attempted  to collect  an additional  "convenience  fee" not allowed by the contract or by law, and was sent by a debt collector who failed  to clearly convey its identity.  Defendant's  collection  letters would, therefore,  leave the least sophisticated  consumer  guessing about important information regarding her debt.  In deciding Defendant's  motions,  the following  five issues  are before this Court:

1. To have standing,  a plaintiff  must allege an invasion  of a legally  protected interest that is both "concrete"  and "particularized."  Courts have found that standing  exists under the FDCPA where, as here, the plaintiff  alleges that the debt collector's  conduct  was false,  misleading,  or unfair.  Does Plaintiff have standing  to bring her claims  under the FDCPA?

2. Section  1692f(1) of the FDCPA  forbids  debt collectors  from collecting  any fee from the consumer  unless it is "expressly  authorized  by the agreement  creating

the debt or permitted by law." Defendant attempted to charge Plaintiff a "convenience fee" for making payments by check over the phone although there is no express authority to do so in either the underlying contract or state law. Can Defendant collect the "convenience fee" from Plaintiff?

3. Section 1692e forbids debt collectors from using false, deceptive, or misleading representations to collect or attempt to collect a debt, including the threat to take an action that cannot legally be taken. Defendant falsely represented that it could charge Plaintiff a "convenience fee" when it could not and tried to collect under an unregistered name when Louisiana law requires that debt collectors register with the State's Secretary of State. Did Defendant use false representations or deceptive means to collect Plaintiff's debt?

4. Section 1692e(14) forbids debt collectors from using any business name other than the debt collector's true name. Courts have interpreted that a business's true name under the FDCPA includes its corporate name and any name registered with the state where the consumer they are collecting from lives. Defendant's collection letters attempted to collect under a name that Defendant did not register with the state until after this lawsuit was filed. Did Defendant attempt to collect Plaintiff's debt using a false name?

5. Courts have held that a false representation by a debt collector is material if it has the capacity to affect the least sophisticated consumer's decisions with respect to a debt. Defendant's attempt to collect a "convenience fee" and failure to clearly identify its name would impact a consumer's decision making with respect to their decision to make payments on a debt. Were Defendant's misrepresentations material?

## II.    Legal standards.

### A.    Rule 12(b)(6).

"When evaluating a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded facts as true and views them in a light most favorable to the plaintiff." *Bouma Constr., Inc. v. First Millenium Constr., LLC*, No. CV 15-00267-BAJ-RLB, 2015 WL 6479166, at *2 (M.D. La. Oct. 27, 2015) (citing *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010)). "[T]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

2

"[T]he court may not look beyond the pleadings in ruling on the motion." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Instead, "[t]o survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief — including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007); (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553, 127 S. Ct. 1955, 1963, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

### B.   Rule 56.

Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party in entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In order to meet its initial burden of establishing that there is no genuine issue of material facts, the moving party must point out "the absence of evidence supporting the nonmoving party's case." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992).

## III.   Statement of Material Facts.

Plaintiff is a natural person allegedly obligated to pay a debt and therefore a "consumer" as defined by 15 U.S.C. § 1692a(3). Doc. 1 at ¶ 16; Doc. 11 at ¶ 16. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6), who at all relevant times engaged in the business of attempting to collect a "debt" from Plaintiff as defined by 15 U.S.C. § 1692a(5). Doc. 1 at ¶ 18; Doc. 11 at ¶

18; Doc. 16-3 at p. 9 ("It is undisputed that the Defendant is a debt collector."). Plaintiff allegedly incurred the debt for necessary medical expenses at Ochsner Health System ("Ochsner") between August 12, 2015 and February 4, 2016. Doc. 1-1; Doc. 1-2; Doc. 16 at ¶ 3.

On March 30, 2016 and July 20, 2016, Defendant sent Plaintiff letters in an attempt to collect a debt. Doc. 1 at ¶¶ 19, 20, 31, 32; Doc. 11 at ¶¶ 19, 20, 31, 32; Doc. 1-1; Doc. 1-2. Both letters identified the letter as coming from "The SOS Group fka The HMC Group" and directed Plaintiff to make payments to "The SOS Group." Doc. 1 at ¶¶ 21, 22, 33; Doc. 11 at ¶¶ 21, 22, 33; Doc. 1-1; Doc. 1-2. At the time the letters were sent, Defendant was only registered under the name "The HMC Group." Doc. 16 at ¶ 2. Defendant did not update its registration with the Louisiana Secretary of State's office until December 8, 2016, almost 8 months after it sent the March 30, 2016 letter to Plaintiff and only after this lawsuit was filed. Doc. 16 at ¶ 2. Further, both the March 30, 2016 and July 20, 2016 letters state: "A $2.00 convenience fee applies to checks by phone." Doc. 1 at ¶ 28, 33.

**IV.    Defendant's motion for summary judgment is premature and Plaintiff requests time to take discovery before the Court considers the evidence it attached to Defendant's motion.**

"Where matters outside the pleadings are considered by the district court on a motion to dismiss, Rule 12(b) requires the court to treat the motion as one for summary judgment and to dispose of it as required by Rule 56." *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1283–84 (5th Cir. 1990). In order to protect the nonmoving party, "[w]henever a motion to dismiss is treated as a motion for summary judgment, the nonmovant is entitled to the procedural safeguards of Rule 56." *Id.* Specifically relevant to this case, Rule 56(d) states: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Rule 56(d) "functions as a safe harbor that has been built into the rules so that summary judgment is not granted prematurely." *State Farm Fire & Cas., Co. v. Whirlpool Corp.*, No. 3:10-CV-1922-D, 2011 WL 3567466, at *2 (N.D. Tex. Aug. 15, 2011). "It is usually invoked when a party claims that it has had insufficient time for discovery or that the relevant facts are in the exclusive control of the opposing party." *Id.* "Given the precautionary nature of the rule, these requests ordinarily are treated and reviewed liberally." *Id.*

Here, Defendant is bringing a motion to dismiss under Rule 12(b)(6) or, alternatively a motion for summary judgment. *See* Doc. 16. However, Defendant's motion for summary judgment is premature. The documents attached to Defendant's motion should be disregarded because discovery has not been conducted in this matter, specifically, a contract ("the Contract") that Defendant cites as proof that it was entitled to collect a "convenience fee" from Plaintiff. *See Crouch Decl.* at ¶¶ 5-7, attached to this motion as Exhibit A; Doc. 16-1. The alleged Contract between Plaintiff and Oschner should be disregarded because Plaintiff has not had sufficient time to corroborate whether Plaintiff would actually be bound to its terms. Specifically, there are two issues with the Contract such that further discovery is necessary to determine the validity and relevance of the document. *See Crouch Decl.* at ¶¶ 12-14. First, the Contract Defendant cites to does not contain Plaintiff's signature and is merely a form contract. Doc. 16-1; *see Reynolds v. EOS CCA, U.S. Asset Mgmt., Inc.*, No. 114CV01868JMSDML, 2016 WL 1639120, at *4-5 (S.D. Ind. Apr. 26, 2016) ("'[G]eneric' terms of service or parallel agreements do not constitute sufficient evidence to overcome summary judgment in the FDCPA context . . . There is nothing in the record which establishes that Ms. Reynolds agreed to, knew about or should have been expecting the imposition of interest and collection costs."). Second, the form contract that

Defendant contends was signed by Plaintiff shows that it was last revised on December 5, 2016—over 10 months after Plaintiff's last hospital visit to Oschner. Doc. 16-1; Doc. 16 at ¶ 3. Discovery is necessary to determine whether Plaintiff signed a contract with Oschner relating to the debt at issue, whether the contract that Plaintiff signed contains identical language to the form contract attached by Defendant, and—if it differs from the terms of the form contract—the actual terms of that contract that Plaintiff signed. *Crouch Decl.* at ¶¶ 15-18.

Defendant improperly introduced evidence outside of the pleadings. As such, Plaintiff requests that this Court strike Defendant's motion for summary judgment and disregard the evidence cited to by Defendant. Alternatively, if the Court would rather determine Defendant's motion as a motion for summary judgment under Rule 56, Plaintiff requests that the Court defer considering the motion to allow Plaintiff time to conduct discovery to determine the validity of the evidence introduced by Defendant's motion. Doc 16-3; *Crouch Decl.* at ¶¶ 15-18.

## V. Plaintiff has standing because she suffered an "injury in fact."

To establish Article III standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v Robins*, 136 S.Ct. 1540, 1548 (2016), *as revised* (May 24, 2016). Defendant's motion only challenges the injury-in-fact requirement. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### A. Plaintiff has a legally protected interest in avoiding misleading or unfair attempts to collect the debt.

Under the FDCPA, consumers have a legally protected interest not to be the target of misleading or unfair attempts to collect any debt. Doc. 1; *see* 15 U.S.C. §§ 1692e, 1692f. Congress

can identify legally protected interests by creating new private rights. *Spokeo*, 136 S. Ct. at 1540 ("because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important . . . [it] may 'elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law.'") (quoting *Lujan*, 504 U.S. at 578). Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)). To effect this underlying purpose, the FDCPA broadly forbids false, misleading, or unfair practices in connection with the collection, or attempted collection, of any debt. 15 USC §§ 1692e, 1692f.

The harm in this case is the exact form of abuse that Congress was attempting to prevent by passing the FDCPA because Defendant sent collection letters that misled consumers as to its true business name and attempted to collect a convenience fee to which it was not entitled. *See* 15 U.S.C. §§ 1692e, 1692f.

**B.    The invasion of Plaintiff's legally protected interest is "concrete" and "particularized."**

"For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Spokeo*, 136 S. Ct. at 1548 (quoting *Lujan*, 504 U.S. at n.1). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Id*. The Court explained that the term "concrete" in this context means "real," and not "abstract." *Id*.

Here, Defendant sent Plaintiff two collection letters that attempted to collect a "convenience fee" that it was not entitled to collect and illegally attempted to collect debts from her using an unregistered pseudonym. This invaded Plaintiff's legally protected interest in being

7

free from misrepresentations and unfair practices. This invasion is not hypothetical or generalized; it has, in fact, occurred to her.

      **C.     Courts have routinely recognized that litigants alleging violations of the FDCPA have standing.**

      It is well established in this Circuit and in courts across the country that a consumer has standing for violations of the FDCPA. *In re Robinson*, 554 B.R. 800, 809–10 (Bankr. W.D. La. 2016) (deferring to the judgment of Congress who is "well positioned to identify intangible harms" and finding Article III standing under the FDCPA); *Sayles v. Advanced Recovery Sys., Inc.*, No. 3:14-CV-911-CWR-FKB, 2016 WL 4522822, at *2 (S.D. Miss. Aug. 26, 2016) (finding violation of section 1692e(8) represents a concrete injury sufficient for Article III standing); *Dunham v. Portfolio Recovery Associates, LLC*, 663 F.3d 997, 1002 (8th Cir. 2011) (finding standing under the FDCPA where the debt collector attempted to collect debt from wrong consumer); *Graf v. Pinnacle Asset Grp., LLC*, No. CIV. 14-1822 SRN/SER, 2015 WL 632180, at *2 (D. Minn. Feb. 12, 2015) ("Court has original jurisdiction over [Plaintiff's] FDCPA claims, since these claims arise under federal law."); *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("[T]he legislative history supports the contention that a debtor has standing to complain of violations of the [FDCPA]"). Consumers even have standing to sue under the FDCPA where there are no actual damages as the consumer has "an economic stake in the outcome of this litigation because [plaintiff] is seeking statutory damages, which may be recovered without regard to actual damages." *Egge v. Healthspan Servs. Co.*, 208 F.R.D. 265, 269 (D. Minn. 2002) (quoting *Wilborn v. Dun & Bradstreet Corp.*, 180 F.R.D. 347, 355 (N.D. Ill. 1998)); *see also Picht v. Hawks*, 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999) ("Proof of deception or actual damages is not necessary to make a recovery under the FDCPA").

In cases involving statutory rights, "the [FDCPA] and the rights it conveys . . . guide the standing determination." *Donoghue v. Bulldog Investors Gen. P'ship,* 696 F.3d 170, 178 (2d Cir. 2012). Accordingly, the FDCPA ensures "that consumers are fully and truthfully apprised of the facts and of their rights," which enables them "to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process." *Tourgeman v. Collins Fin. Servs., Inc.*, 755 F.3d 1109, 1122 (9th Cir. 2014); *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1171 (9th Cir. 2006). Here, a violation of the consumer's right to an accurate representation of the alleged debt and the name of the debt collector who is attempting to collect the debt from her is a sufficient injury to confer standing.

**D.    *Spokeo* did not overrule four decades of FDCPA case law.**

The Court's holding in *Spokeo* did not fundamentally change how consumer protection laws are enforced. Instead, *Spokeo* merely affirmed the existing case law on standing and remanded with instructions for the lower court to consider the separate "concreteness" element of the injury-in-fact requirement. Notably, the Supreme Court emphasized "we take no position as to whether the Ninth Circuit's ultimate conclusion—that Robins adequately alleged an injury in fact—was correct." *Id.* at 1550. *Spokeo* does nothing to overturn the well-settled precedent recognizing a consumer's standing under the FDCPA. In fact, the Court specifically opined that being the object of a misrepresentation—as Plaintiff was here—is precisely the sort of injury that creates standing.

**1.    *Spokeo* specifically pointed to misleading communications as an example of injuries-in-fact that create standing.**

In support of its statement that a "plaintiff seeking to vindicate a statutorily created private right need not allege actual harm beyond the invasion of that private right," the Court cited its decision in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 364 (1982). *Spokeo, Inc.*, 136 S. Ct.

at 1553. In *Havens*, the Court held that the deprivation of a right not to be "the object of a misrepresentation made unlawful" by a statute satisfies the injury-in-fact requirement. *Havens*, 455 U.S. at 364. A person that has been the object of a prohibited misrepresentation has "suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a damages claim." *Id*. Again, this legal right is analogous to the FDCPA's prohibition on the use of "any false, deceptive, or misleading representation or means" and from collecting "any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §§ 1692e; 692f(1). Defendant sent Plaintiff the March 30, 2016 and July 20, 2016 letters which attempted to collect an amount Defendant was not authorized to collect and which misrepresented its identity. These actions caused Plaintiff the same injury that *Spokeo* acknowledged as sufficient for standing.

2. **Courts addressing standing to bring FDCPA claims post-*Spokeo* have overwhelmingly maintained jurisdiction.**

In *Church v. Accretive Health, Inc.*, the Eleventh Circuit stated that the violation of the plaintiff's FDCPA rights is an injury "that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, [plaintiff] has sufficiently alleged that she suffered a concrete injury and thus, satisfies the injury-in-fact requirement." No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016); *see also Saenz v. Buckeye Check Cashing of Illinois*, No. 16 CV 6052, 2016 WL 5080747 at *2 (N.D. Ill. Sept. 20, 2016) (holding that plaintiff had standing to bring FDCPA claim because "nothing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III.").

Relevant to the claims brought in this case, district courts within the Fifth Circuit have found that violations of §§ 1692e, 1692f are sufficient to convey standing. *See Masson v. Pioneer*

10

*Credit Recovery, Inc.,* No. 16-1887, 2017 WL 819099, at *3 (E.D. La. Mar. 2, 2017) (holding that the plaintiff had standing to bring claims that the defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692f(1)); *In re Robinson,* 554 B.R. 800, 809–10 (Bankr. W.D. La. 2016) (finding that the plaintiff had standing to bring claims that the defendant violated 15 U.S.C. §§ 1692d, 1692e, and 1692f; *Sayles v. Advanced Recovery Sys., Inc.*, No. 3:14–cv–911, 2016 WL 4522822, at *2–3 (S.D. Miss. Aug. 26, 2016) (finding violation of section 1692e(8) represents a concrete injury sufficient for Article III standing).

District courts across the country have also come to this same conclusion. *See Remington v. Financial Recovery Services, Inc.,* No. 3:16-cv-865(JAM), 2017 WL 1014994, at *2 (D. Conn. Mar. 15, 2017) (finding standing because "the alleged harm is impairment of an FDCPA-created substantive right to truthful, non-deceptive information in debt collection communications."); *Carney v. Goldman, P.C.,* No. 15-260-BRM-DEA, 2016 WL 7408849, at *5 (D.N.J. Dec. 22, 2016) ("[T]he FDCPA create[s] a private duty owed personally to a consumer to refrain from using false, deceptive, or misleading means or representations in attempting to collect a debt.") (internal citations omitted); *Kaymark v. Udren Law Offices, P.C.,* No. 13-419, 2016 WL 7187840, at *7 (W.D. Penn. Dec. 12, 2016) ("The goal of the FDCPA is to protect consumers from harmful debt-collection practices, and debtors have a statutory right 'to be free from being subjected to false, deceptive, unfair or unconscionable means to collect a debt.'") (quoting *Munoz v. Cal. Bus. Bureau, Inc.,* No. 1:15-cv-01345-BAM, 2016 WL 6517655, at *6 (E.D. Cal. Nov. 1, 2016)); *Jackson v. Abendroth & Russell, P.C.,* No. 416CV00113RGEHCA, 2016 WL 4942074, at *9 (S.D. Iowa Sept. 12, 2016) ("the FDCPA created the substantive right for consumers to be free from debt collector abuse"); *Bernal v. NRA Grp., LLC,* No. 16 C 1904, 2016 WL 4530321, at *4–5 (N.D. Ill. Aug. 30, 2016) (finding violations of 15 U.S.C. §§ 1692e, 1692f represent a concrete

injury sufficient for Article III standing.); *Prindle v. Carrington Mortgage Servs., LLC*, No. 3:13-CV-1349-J-34PDB, 2016 WL 4369424, at *9 (M.D. Fla. Aug. 16, 2016) ("[T]hrough the FDCPA, Congress has conferred upon all consumers the right to be free from certain practices Congress has deemed abusive. As the object of allegedly false, deceptive, and/or misleading representations in connection with the collection of a debt, [plaintiff] has alleged that she 'has suffered injury in precisely the form the [FDCPA] was intended to guard against.'") (quoting *Havens*, 455 U.S. at 373–74); *Irvine v. I.C. Sys., Inc.,* No. 14-CV-01329-PAB-KMT, 2016 WL 4196812, at *3 (D. Colo. July 29, 2016) ("Here, defendant gave plaintiff false information about her debt . . . The Court finds that the harms asserted by plaintiff are sufficiently particularized and concrete to establish her actual injury and that she has standing to bring her FDCPA claim."); *see also* Exhibit B at p. 3-6 (court order in *Oliva v. ARStrat LLC,* No. cv-16-01525-PHX-ROS, denying defendant's motion to dismiss for lack of standing); Exhibit C at p. 4-12 (court order in *Mende v. Razor Capital, LLC; and Gurstel Chargo, P.A.*, No. 15-cv-20155-WMW-HB, denying defendant's motion for summary judgment for lack of standing).

These courts that have addressed Article III standing in the aftermath of *Spokeo* support Plaintiff's standing claim. Similar to the cases cite above, Plaintiff has established an actual injury because her rights under the FDCPA were violated. Plaintiff suffered particularized and concrete harm because she was made the object of unfair collection practices when Defendant used a false name and attempted to collect charges from Plaintiff that it was not entitled to collect.

## VI.    The FDCPA is a strict liability statute, liberally construed in favor of the consumer.

Congress enacted the FDCPA to "eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman*, 559 U.S. at 577 (citing

§ 1692(e)). "When deciding whether a debt collection letter violates the FDCPA, this court 'must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004)). "That is, in determining whether the defendant's actions are deceptive under the FDCPA we must assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Goswami*, 377 F.3d at 495.

In order to best implement Congress' purposes for enacting the FDPCA, a strict liability standard applies to violations of the Act. *Reich v. Van Ru Credit Corp.*, 191 F. Supp. 3d 668, 675 (E.D. Tex. 2016); *Walker v. Pharia, LLC*, No. 4:09-CV-369-Y, 2010 WL 565654, at *3 (N.D. Tex. Feb. 18, 2010) ("[T]he FDCPA is a strict liability statute—collector 'need not be deliberate, reckless, or even negligent to trigger liability.") (quoting *Ross v. RJM Acquisitions Runding LLC*, 480 F.3d 493, 495 (7th Cir. 2007)); *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector.").

## VII. Defendant violated the FDCPA by attempting to collect a "convenience fee" from Plaintiff.

### A. Defendant violated Section 1692f(1) for attempting to collect an amount not expressly authorized by the contract creating the debt or permitted by state law.

A debt collector may not collect "or attempt to collect . . . any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement collecting the debt or permitted by law." 15 U.S.C. 1692f(1). Such additional amounts are permitted only if "(a) the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or (b) the contract is silent but the charge is otherwise expressly permitted by state law." FTC Official Staff

13

Commentary on FDCPA, 53 Fed. Reg. 50,097, 50,107-08, *available at* 1988 WL 269068 (F.R.) (Fed. Trade Comm'n 1988).

"The 'permitted by law' language of the FDCPA has been construed to mean 'an affirmative authorization, not just indulgent silence.'" *Champion v. Target Nat'l Bank*, No. 1:12-CV-4196-RLV, 2013 WL 8699367, at *10 (N.D. Ga. Apr. 15, 2013) (*quoting Shula v. Lawent*, No. 01 C 4883, 2002 WL 31870157, at *9 (N.D. Ill. Dec.23, 2002)). "[I]t does not follow . . . that any charges not prohibited by law are necessarily permitted." *Newman v. Checkrite California, Inc.*, 912 F. Supp. 1354, 1368 (E.D. Cal. 1995). "To establish that a particular fee does not violate § 1692f(1), the debt collector must identify a state law that authorizes the fee." *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1080 (E.D. Cal. 2008). "The burden of proving a statutory exception falls on the party seeking to reap the benefit of the exception." *Del Campo v. Am. Corrective Counseling Serv., Inc.*, 718 F. Supp. 2d 1116, 1133 (N.D. Cal. 2010).

Courts across the country have found that attempting to collect a convenience fee not authorized by law or the contract violates § 1692f(1). *See e.g. Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1019 (E.D. Mo. July 17, 2015) (holding that the plaintiff stated a claim that the defendant's attempt to collect a convenience fee violated § 1692f(1)); *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 436 (E.D.N.Y. 2014) (same); *Shami v. Nat'l Enter. Sys.*, No. 09–CV–722, 2010 WL 3824151 at *2–4 (E.D.N.Y. Sept. 23, 2010) (same). "What matters is § 1692f(1)'s plain instruction that the collection of any amount incidental to the principal obligation, unless otherwise authorized by agreement between the parties or permitted by law, violates the FDCPA. Courts have interpreted the FDCPA broadly, and it would be anomalous to conclude 'any amount' does not encompass the processing fees at issue here." *Quinteros*, 999 F. Supp. 2d at 438.

The fact that the convenience fee attaches to only one of several forms of payment options is not dispositive to the fact that Defendant attempted to collect a fee it was not legally entitled to collect. *See Johnson-Morris v. Santander Consumer USA, Inc.*, No. 16 C 1456, 2016 WL 3671468, at *5-6 (N.D. Ill. July 11, 2016). Courts have held that "offering a payment option that does not violate the statute does not save offering a payment option that would violate the statute" and the reasoning for this is simple: "the later [sic] is still an attempt to collect a fee which is prohibited by the FDCPA." *Weast*, 115 F. Supp. 3d at 1023. Quite simply, "[i]t is immaterial that the fee was optional and fully disclosed if the fee is impermissible altogether." *Acosta v. Credit Bureau of Napa County*, No. 14 C 8198, 2015 WL 1943244, at *3–4 (N.D. Ill. Apr. 29, 2015).

The cases cited by Defendant which allowed a convenience fee did so on the basis that the debt collector was passing through an expense that was charged by an independent entity. Doc. 16-3 at p. 19; *see e.g. Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290, 293 (S.D. Ohio 1996) ("[T]he uncontradicted evidence proved that any such fee . . . would not be paid to ACB or any entity it controlled and was a standard fee charged by the processor of the payment, an independent entity.). While Plaintiff disputes the rationale of decisions by courts allowing a pass-through to consumers, for purposes of Defendant's motion to dismiss, Plaintiff has sufficiently stated a claim upon which relief may be granted. Doc. 16-3 at p. 19. For purposes of Defendant's motion for summary judgment, Defendant's motion does not contend that the convenience fee was a standard fee imposed by a third party and its motion does not contain sufficient evidence to justify summary judgment in its favor. *See id.*

Here, Defendant's March 30, 2016 and July 20, 2016 letters both state: "A convenience fee applies to checks by phone." Doc. 1-1; Doc. 1-2. However, Defendant was not authorized to collect a convenience fee for payments made via check by phone. Doc. 1 at ¶¶ 29-30. Defendant

15

was not expressly authorized to collect the convenience fee in the contract creating the underlying Debt and state law in Louisiana does not affirmatively permit Defendant from charging such a fee. Defendant argues that there was no Louisiana statute that prohibited a convenience fee and cited various statutes granting Louisiana state agencies the right to charge a convenience fee. Doc. 16-3 at p. 16. However, the FDCPA requires an affirmative right to charge any additional amount "not just indulgent silence." *Champion*, 2013 WL 8699367, at *10. Defendant was unable to point to any law in the State of Louisiana which would affirmatively permit Defendant, as a debt collector collecting a debt from a consumer, to charge a convenience fee. Plaintiff has similarly been unable to find any law which would permit Defendant to do so. Therefore, Defendant violated § 1692f(1) for charging any amount not authorized by law. *See Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 27 (2d Cir. 1989) ("It is clear that Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices, and courts are not at liberty to excuse violations where the language of the statute clearly comprehends them.").

### 1. The contract attached as an exhibit by Defendant does not expressly allow for convenience fees.

"[W]hen state law does not affirmatively authorize or prohibit service charges, a service charge may only be imposed if the customer expressly agreed to it in the contract which gives rise to the debt." *Weast*, 115 F. Supp. 3d at 1022 (citing *Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 407–08 (3d Cir. 2000); *Tuttle v. Equifax Check,* 190 F.3d 9, 13 (2d Cir. 1999)).

Even if the Court were to consider the contract—it should not—the agreement with the hospital does not expressly allow for the convenience fee that Defendant attempted to collect:

> I agree that in consideration of the services and supplies that have been or will be furnished to the patient, I am hereby obligated to pay all charges made for or on the account of the patient according to the standard rates (in effect at the time the

services and supplies are delivered) established by Ochsner, including its Patient Financial Assistance Policy to the extent it is applicable. I understand that I am responsible for all charges, or portions thereof, not covered by insurance or other sources. Patient refunds will be distributed only after balances at all Ochsner facilities are paid.

Doc. 16-3.

Here, the contract only expressly binds the patient to charges made by Ochsner in exchange for the "services and supplies" that the patient is receiving. Doc. 16-3. The contract does not expressly provide for any convenience fees or, even more generally, any collection costs imposed by a third party debt collector. Doc. 16-3. Thus, even if this Court considers the evidence supplied by Defendant, there is nothing in the contract that expressly allows for the convenience fee that Defendant attempted to charge Plaintiff.

> **2.      By receiving Defendant's letters, Plaintiff was the subject of collection activity.**

A debt collector may violate f(1) simply by *attempting* to collect an unauthorized amount— actual collection is not required. *See, e.g., Barows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 346, 354 (D.N.J. 2006) ("Despite the fact that Plaintiff never paid the attorneys' fees and costs requested by Defendants . . . [t]he FDCPA prohibits 'unfair or unconscionable means to collect or *attempt* to collect any debt' not permitted by law. Thus, a debt collector can violate the FDCPA even if he does not actually receive the illegal debt he tried to collect.") (emphasis in original) (internal citations omitted); *Shami*, 914 F. Supp. 2d at 357 n.2 ("whether a fee was in fact collected is not material to the dispute, since the statute covers both collections and *attempts* to collect") (emphasis in original); *Sandlin v. Shapiro & Fishman*, 919 F. Supp. 1564, 1568 (M.D. Fla. 1996) ("the statute plainly states that an 'attempt to collect' an unauthorized debt is as forbidden as the actual collection would be"). This interpretation is further supported because the general provision under § 1692f states that the specifically enumerated sections do not "limit[] the general

application" against the use of "unfair or unconscionable means to collect **or attempt to collect** any debt." 15 U.S.C. § 1692f (emphasis added). Interpreting § 1692f(1) to only apply to actual collections would limit the general application of § 1692f.

Defendant's attempt to collect an amount that was neither authorized by contract or state law is a violation of § 1692f(1).

**B.     Defendant's attempts to collect a convenience fee from Plaintiff violate Section 1692e.**

The FDCPA also forbids the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C § 1692e. The FDCPA creates a broad, flexible prohibition against the use of misleading, deceptive, or false representations in the collection of debts. *See* 15 U.S.C. §§ 1692e, 1692e(10); *see also Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) (citing legislative history reference to the FDCPA's general prohibitions which "will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed"). "This provision, along with its subsections, provides an 'extraordinarily broad' base of protection to consumers . . . and is intended to prevent all abusive debt collection practices by independent debt collectors that tend to deceive or mislead a consumer." *Gillie v. Law Office of Eric A. Jones, LLC*, 785 F.3d 1091, 1105 (6th Cir. 2015) (citing *Frey v. Gangwish,* 970 F.2d 1516, 1521 (6th Cir. 1992)).

Under subsection 1692e(2)(B), the FDCPA specifically forbids the "false representation of—any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(B). Further, 15 U.S.C. § 1692e(5) forbids the "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Under both subsections, courts have found that an attempt to collect an unauthorized amount is a violation of the FDCPA. *See West v. Costen*, 558 F. Supp. 564 (W.D.

18

Va. 1983) (holding that defendants violated § 1692e(2)(B) because "there was no legal basis for imposing the service charges. Therefore the service charges were compensation which cannot be 'legally received'"); *see also Eads v. Wolpoff & Abramson, LLP*, 538 F. Supp. 2d 981, 987 (W.D. Tex. 2008) ("A debt collector may be liable for violating § 1692e(5) if it adds an unauthorized collection fee to the amount of debt owed.") (citing *Newman,* 912 F. Supp. at 1368).

For the same reasons as above, *supra* Sec. VII B., Defendant violated the FDCPA at 15 U.S.C. §§ 1692e(2)(B), 1692e(5), and 1692e(10) for falsely representing it could collect a collection fee which it was not legally entitled to collect.

## VIII.   Defendant violated the FDCPA by attempting to collect under a name it was not registered under at the time it sent collection letters to Plaintiff.

"Any collection agency or debt collector doing business in this state shall register with the secretary of state." LA Rev. Stat. § 9:3534.1B.[1] In short, a debt collector may not collect debt in Louisiana unless they are registered.

Here, Defendant sent Plaintiff two letters which identified itself as "The SOS Group fka The HMC Group" or just "The SOS Group." Doc. 1 at ¶¶ 21, 22, 33; Doc. 11 at ¶¶ 21, 22, 33; Doc. 1-1; Doc. 1-2. Defendant admits that at the time the letters were sent, Defendant had not registered under the name "The SOS Group" and was only registered under the name "The HMC Group." Doc. 16 at ¶ 2. Defendant further admits that it was not until December 8, 2016 that Defendant updated its registration with the Louisiana Secretary of State's office to reflect its new trade name: "The SOS Group." Doc. 16 at ¶ 2. ("The HMC Group updated its registration with the Louisiana Secretary of State's office to reflect its new d.b.a. 'The SOS Group' . . . ."). Defendant's

---

[1] Four times in her complaint, Plaintiff stated that Defendant had a licensing requirement rather than a registration requirement. Doc. 1. However, Plaintiff cited to the relevant Louisiana state statute which discusses the registration requirement and Defendant had fair notice of the claims alleged. Doc. 1. To the extent the court feels that Plaintiff's use of license rather than registration effects the claims, Plaintiff requests leave to amend its complaint accordingly.

updated registration did not occur until after Plaintiff filed her lawsuit and almost 8 months after it sent the March 30, 2016 letter to Plaintiff. Doc. 16 at ¶ 2; Doc. 1; Doc. 1-1.

**A.     Defendant violated § 1692e(5) by threatening to collect a debt from Plaintiff without being properly registered with the Secretary of State for Louisiana.**

The FDCPA forbids "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Section 1692e(5) prohibits threats of legal action that is forbidden under federal or state law. Therefore, if a state law requires a debt collector to register with the state, or obtain a license, prior to engaging in collection activity, it is a violation of § 1692e(5) if a debt collector disregards the state law. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1198 (11th Cir. 2010) (holding that the defendant violated § 1692e(5) when it attempted to collect a debt prior to registering with the State of Florida, as required by state law); *Smith v. LVNV Funding, L.L.C.*, 2:11-CV-379, 2012 WL 3890255 (E.D. Tenn. Sept. 7, 2012) ("[P]laintiffs state a cause of action against LVNV under § 1692e(5) on the basis that LVNV was not licensed under the TCSA and not only threatened to take, but took, legal action in the filing of its collection lawsuits, which it was not authorized to do under Tennessee law.").

Here, Defendant attempted to collect a debt from Plaintiff under the name "The SOS Group" and "The SOS Group fka The HMC Group" without being registered with the Louisiana Secretary of State's office under either name. Therefore Defendant's attempt to collect a debt without being registered violates LA Rev. Stat. § 9:3534.1B and constitutes a violation of § 1692e(5) for threatening to take an action that is not intended to be taken.

**B.     Defendant violated § 1692e(14) for using a collection name other than its true name.**

The FDCPA forbids the "use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization." 15 U.S.C. § 1692e(14).

"Under the FDCPA, a debt collector is obligated to use its own name when corresponding with a consumer." *Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031, 1045 (W.D. Wis. 2002). While the use of the term "true name" is not defined under the FDPCA, courts interpreting this requirement have stated that the purpose of the true name requirement is to prohibit use of names that are false, deceptive or misleading. *See Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293, 1298–99 (S.D. Ala. 2011). "Despite the ambiguity at the periphery of analysis of what is a true name, § 1692e(14) at its core clearly prohibits the use of a name that is neither the collector's actual corporate name nor its trade name, licensed or otherwise." *Boyko v. Am. Int'l Grp., Inc.*, No. CIV. 08-2214 RBK/JS, 2009 WL 5194431, at *6 (D.N.J. Dec. 23, 2009). "Moreover, the Court is unconvinced that the 'least sophisticated debtor' would not be misled by a debt collector's use of a commonly used—but unlicensed or unregistered—name." *Id.* at *7. Thus, the least sophisticated consumer could be misled by the use of any name other than the debt collector's actual corporate name or its registered trade name.

Here, the March 30, 2016 and July 20, 2016 letters both identify the name of Defendant as "The SOS Group" and "The SOS Group fka The HMC Group." Doc. 1 at ¶¶ 21-22, 33; Doc. 1-1; Doc. 1-2. It wasn't until December 8, 2016—many months after Plaintiff's receipt of the collection letters and after Plaintiff filed this lawsuit—that the HMC Group updated its registration with the Louisiana Secretary of State's office under the new trade name of "The SOS Group." Doc. 16 at ¶ 2. At the times that Plaintiff received the letters, Defendant was registered only with the Louisiana Secretary of State's office to do business under the trade name "The HMC Group." Doc. 16 at ¶ 2. Therefore, the fact that Defendant was portraying itself as "fka The HMC Group" was a false statement because at the time that Defendant sent its letters to Plaintiff, it was not *formerly known as* the HMC Group, it was currently known as the HMC Group. This also assumes that the

least sophisticated consumer would even understand what fka means. The use of fka is especially likely to be misunderstood here, where Defendant's letters placed fka in the middle of a name that already contained two other three letter acronyms. Doc. 1-1, Doc. 1-2.

The purpose of § 1692e(14) is to ensure that the consumer can identify the collection agency so that the consumer may research and gain greater information about the entity they are receiving collection letters from. Therefore, this provision allows a consumer do her own due diligence about the debt collector and help protect herself from less reputable debt collectors. By using a name that was not registered with the Louisiana Secretary of State's office, the least sophisticated consumer would be misled about the identity of the entity that was attempting to collect a debt from them. The least sophisticated consumer would therefore be in the unenviable position of deciding whether to make a payment to a debt collector she has not been able to investigate.

Defendant failed to identify itself by its actual corporate name or the trade name it had registered with the Louisiana Secretary of State's office. Because Defendant did not properly identify itself, the least sophisticated consumer would be left unsure about the identity of Defendant and would unable to confirm that the debt collector trying to collect money from her is a legitimate entity. Defendant attempted to collect the debt from Plaintiff and identified itself as a name other than its true name—using neither its actual corporate name or its registered trade name—Defendant violated § 1692e(14).

### C.      Defendant violated §§ 1692e(10) and 1692f because using a name other than the one it is registered under is false, misleading and unfair.

The FDCPA forbids the "use of any false representation or deceptive means to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10); *see Hamilton v. United Healthcare of Louisiana, Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) (citing legislative history

reference to the FDCPA's general prohibitions which "will enable the courts, where appropriate, to proscribe other improper conduct which is not specifically addressed"). The FDCPA also forbids the "use of unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. While the FDCPA specifically lists eight actions which would violate the section, "the subsections are not intended to limit general application of the 'unfair or unconscionable' means prohibition." *LeBlanc*, 601 F.3d at 1199. The Eleventh Circuit has stated that "[t]he plain meaning of 'unfair' is 'marked by injustice, partiality, or deception.' Significantly, in *Jeter,* we noted in dictum that in the FTC context, '[a]n act or practice is deceptive or unfair . . . if it has the tendency or capacity to deceive.'" *Id.* at 1200 (quoting *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1172 (11th Cir. 1985)).

Here, Plaintiff alleges that Defendant's use of a name other than the one it is registered under—as required by Louisiana state law—is false, misleading, and unfair. Doc. 1 at ¶¶ 63, 68-72. Louisiana state law requires that "[a]ny collection agency or debt collector doing business in this state shall register with the secretary of state." LA Rev. Stat. § 9:3534.1B. Because one of the express purposes of the FDCPA is "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses" Louisiana has taken action consistent with the FDCPA's animating purpose to protect consumers. *See* 15 U.S.C. § 1692(e). Defendant's failure to collect under the name it is registered under is also unfair to other collection agencies who do properly register and are competitively disadvantaged by refraining from using illegal collection methods and ignoring state law. *See id.*

The parties agree that "[t]he purpose of *registration* statutes . . . is to enable regulators and consumers alike to easily locate collection agency [sic] should the need arise." Doc. 16-3 at p. 11-

12 (emphasis in original). Using a name that is different from both Defendant's corporate or registered trade name does not effectuate this purpose. As mentioned above, Defendant made false statements by stating that it was "fka The HMC Group" because at the time that Defendant sent its letters to Plaintiff it was currently known as the HMC Group. Plaintiff would not be able to identify or locate Defendant because the only entity registered with the State of Louisiana was the HMC Group. Doc. 16 at ¶ 2. Because Defendant did not follow the state of Louisiana's registration requirement, the least sophisticated consumer would be unable to locate the collection agency that was attempting to collect a debt. As recognized by Louisiana state law, it is false, misleading, and unfair—both to the least sophisticated consumer and other debt collectors—to collect under an unregistered trade name. Therefore, Defendant violated 15 U.S.C. §§ 1692e(10), 1692f.

## IX.   Defendant's misrepresentations are material.

"A false, deceptive, or misleading statement is 'material' when it has 'the ability to influence a consumer's decision.'" *Gomez v. Niemann & Heyer, L.L.P.*, No. 1:16-CV-119 RP, 2016 WL 3562148, at *4 (W.D. Tex. June 24, 2016) (quoting *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 942 (7th Cir. 2011)); *Jensen v. Pressler & Pressler*, 791 F.3d 413, 421 (3rd Cir. 2015) ("[T]he FDCPA was designed to give debtors reliable information so that they can make informed decisions about how to address debts."). Courts have stated that the materiality standard is more like a "corollary" to the least sophisticated consumer standard and that where "a statement would not mislead the unsophisticated consumer, it does not violate the [Act]—even if

it is false in some technical sense." *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033–34 (9th Cir. 2010) (quoting *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 758 (7th Cir. 2009)).

The materiality standard, like the least sophisticated, or unsophisticated consumer standard, "is objective, meaning that it is unimportant whether the individual who actually received an allegedly violative letter was mislead or deceived." *Gomez*, 2016 WL 3562148, at *5; *see also Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) (discussing that violations of the FDCPA are based on "objective standards" not individualized ones.). To assess how a specific plaintiff interpreted collection letters would "incorrectly conflate[] the materiality requirement with a non-existent requirement that a plaintiff be actually and subjectively misled." *Gorman v. Messerli & Kramer, P.A.*, No. CV 15-1890 (JRT/HB), 2016 WL 755618, at *5 (D. Minn. Feb. 25, 2016) ("Importing a requirement that a plaintiff be subjectively misled would undermine the FDCPA's well-established objective unsophisticated consumer.").

Here, Defendant's false representation that it was able to collect a convenience fee for payments made by check via phone, as well as its failure to clearly identify its corporate or registered trade name would—and did—impact a consumer's decision making with regard to their debt. The least sophisticated consumer could decide to not pay Defendant on the basis that she does not want to pay the additional convenience fee, or decide to not pay Defendant because she is unable to corroborate Defendant's identity. Indeed, while the least sophisticated consumer standard is objective and Plaintiff's individual reaction is not dispositive, it is worth considering that Plaintiff responded to Defendant's letters by contacting her original creditor and made her payments to them instead of Defendant. Doc. 16-3 at p. 3. Therefore, Defendant's

misrepresentations were material because they would impact the least sophisticated consumer's decision making with regard to their debt.

## X.    Conclusion.

For the reasons stated above, Plaintiff respectfully requests that this Court deny Defendant's motions to dismiss under 12(b)(1) and 12(b)(6). Further, Plaintiff requests that this Court deny Defendant's motion for summary judgment under Rule 56, or in the alternative, delay its decision until Plaintiff is able to conduct further discovery to address the evidence introduced by Defendant in its motion.   Doc. 16.

Dated: March 24, 2017.

/s/ Katherine Z. Crouch
Katherine Z. Crouch
Crouch Law, LLC
LA State Bar No. 34910
2372 St. Claude Ave. Suite 224
New Orleans, LA 70117
Telephone: (504) 982-6995
Facsimile: (888) 364-5882
Katherine.crouch@gmail.com

Correspondence address:
Thompson Consumer Law Group, PLLC
5235 E. Southern Ave. D106-618
Mesa, AZ 85206

Attorneys for Plaintiff Barbara McLain

## **CERTIFICATE  OF SERVICE**

I hereby certify that on March 24, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which shall send notification of such filing to all counsel of record.

/s/ Zac Landis
Zac Landis
