# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BARBARA McLAIN,** *on behalf of herself*
*and all others similarly situated*

**VERSUS**

**HEAD MERCANTILE CO., INC.**
**d/b/a THE HMC GROUP**
**a/k/a THE SOS GROUP**

**CIVIL ACTION**

**NO. 16-780-JWD-RLB**

## RULING AND ORDER

### I.     Introduction

This matter comes before the Court on Defendant The Head Mercantile Co., Inc. d/b/a The HMC Group a/k/a The SOS Group's ("Defendant") *Motion to Dismiss or for Summary Judgment*. (**Doc. 16.**) Plaintiff Barbara McLain, on behalf of herself and others similarly situated ("Plaintiff"), filed an opposition in which she addressed the motion to dismiss on the merits, and argued that Defendant's motion for summary judgment was premature. (**Doc. 27.**) Defendant filed a reply brief arguing that its Rule 56 motion is ripe for consideration and addressing the merits of Plaintiff's opposition. (**Doc. 30.**) After conducting limited discovery responsive to the issues raised on summary judgment, and with leave of Court (*see* Doc. 36), Plaintiff filed a supplemental opposition responding on the merits to the summary judgment motion. (**Doc. 37.**) Defendant subsequently filed a supplemental reply brief. (**Doc. 38.**) After careful consideration of the law, facts, and arguments of the parties, for the reasons set forth below, Defendant's motion to dismiss is **DENIED AS MOOT** and its motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**.

### II.     Background

1

Defendant is an Ohio corporation doing business as a debt collection agency. (Docs. 16 at 1; 16-1 at 1.) On or around June 9, 2014, Defendant registered with the Louisiana Secretary of State's office to do business in Louisiana under the name "The HMC Group" and provided its correct domicile and Ohio mailing address. (Docs. 16 at 1—2; 16-1 at 1.) On or about December 8, 2016, Defendant updated its registration with the Louisiana Secretary of State's office to reflect its new "doing business as" name: "The SOS Group," and once again provided the same Ohio domicile mailing address. (Docs. 16 at 2; 16-1 at 1—2, 5—7.)

Plaintiff is a Louisiana resident who claims that she is "allegedly obligated to pay a debt owed or due, or asserted to be owed or due a creditor other than Defendant." (Doc. 1 at 3.) Specifically, Plaintiff's debt arose out of medical services she received from Ochsner Health System ("Ochsner") between August 12, 2015 and February 4, 2016. (Docs. 16 at 2; 16-1 at 2.) Each time Plaintiff sought medical services at Ochsner, she signed documentation that contained the following provision:

> **Acceptance of Financial Responsibility**: I agree that in consideration of the services and supplies that have been or will be furnished to the patient, I am hereby obligated to pay all charges made for or the account of the patient according to the standard rates (in effect at the time the services and supplies are delivered) established by Ochsner, including its Patient Financial Assistance Policy to the extent it is applicable. I understand that I am responsible for all charges, or portions thereof, not covered by insurance or other sources…

(Docs. 16 at 2; 16-1 at 9; 37-1 at 3.)

Ochsner employed Defendant's services to collect outstanding debts from its patients, including Plaintiff. In connection with her debt, Defendant sent Plaintiff a letter dated March 30, 2016, in which Defendant identified itself as "The SOS Group fka The HMC Group." (Docs. 1 at 4; 1-1 at 2.) Plaintiff received a second letter from Defendant dated July 20, 2016; this letter also reflected that it was from "The SOS Group fka The HMC Group". (Docs. 1 at 4; 1-2 at 2.)

Specifically, as evidenced by the letters attached as exhibits to Plaintiff's complaint, these letters identify the sender as "The SOS Group" in the body of the letter, but include the "The SOS Group fka The HMC Group" language in the top left corner of the letter. (Docs. 1-1 at 2; 1-2 at 2.) The address under both headings is the same, and reflects Defendant's proper Ohio domicile address. (Docs. 1-1 at 2; 1-2 at 2.) In her complaint, filed November 22, 2016, Plaintiff avers that a "query of the Louisiana Secretary of State's website does not produce any business filings under 'The SOS Group.'… [or] under 'The SOS Group fka The HMC Group.'"[1] (Doc. 1 at 4.)

In both the March 30, 2016 and July 20, 2016 letters, Defendant offers various options through which the recipient debtor may pay his or her debt, including an option to pay online or via a toll-free number to pay either by credit/debit card or via check by phone. (Docs. 1 at 5; 1-1 at 2; 1-2 at 2.) The letters further state that "[a] $2.00 convenience fee applies to checks by phone." (Docs. 1-1 at 2; 1-2 at 2.) They direct the debtor to make checks payable to "The SOS Group." (Docs. 1 at 5; 1-1 at 2; 1-2 at 2.)

Plaintiff argues that the letter, which improperly identifies Defendant as "The SOS Group" and which imposes $2.00 convenience fee associated with payment of checks by phone, violates various provisions of the Federal Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, which "Congress enacted [] to 'eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers'". (Doc. 1 at 2 (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)).) Plaintiff maintains that these letters are based upon a form or template that Defendant sends as its initial communication to a consumer in connection with its collection of a debt. (*Id.*

---

[1] As noted above, Defendant did not update its registration until December 2016—after the filing of the complaint—to reflect its d/b/a name of "The SOS Group." (Docs. 16 at 2; 16-1 at 1—2, 5—7.)

at 5.) She avers that Defendant has used this form letter to send collection notices to at least forty (40) individuals in Louisiana within the one year preceding the filing of the complaint. (*Id.* at 6.) Plaintiff seeks to represent the following class of individuals: "All persons in the State of Louisiana to whom Defendant sent, within one year before the date of this complaint and in connection with the collection of a debt, a collection letter based upon the Template." (*Id.*)

In her complaint, Plaintiff alleges that Defendant violated six provisions of the FDPCA: first, that Defendant violated Section 1692e(2)(B) "by falsely representing that it could legally charge a $2.00 fee for payments made by check over the telephone and for falsely representing that it was entitled to collect the Debt from Plaintiff when they are not licensed in the state as required under Louisiana state law." (*Id.* at 9.)

Second, she argues that Defendant violated Section 1692e(5) when it "threaten[ed] to take an action against Plaintiff that cannot be legally taken or that was not actually intended to be taken, including by taking a $2.00 fee for payments made by check over the telephone and for attempting to collect the Debt from Plaintiff when they are not licensed" in Louisiana, as required by law. (*Id.* at 10.)

Third, Plaintiff claims that Defendant violated Section 1692e(10) "by using false, deceptive, or misleading representations or means to collect or attempt to collect a debt," including by the use of a name not registered with the Secretary of State and by "attempting to collect a $2.00 fee for payments made by check over the telephone which they are not entitled to charge". (*Id.* at 11.)

Fourth, Plaintiff avers that Defendant violated Section 1962e(14), which "forbids the 'use of any business, company, or organization name other than the true name of the debt collector's business, company or organization'" because it "attempt[ed] to collect under the business name

'The SOS Group' when this name is not registered with the Louisiana Secretary of State as required by state law and is a name other than the true name of the debt collector's business, company, or organization." (*Id.* at 13.)

Fifth, Plaintiff argues that Defendant violated Section 1692f, which prohibits a debt collector from employing "unfair or unconscionable means to collect or attempt to collect any debt" because Defendant "engag[ed] in unfair or unconscionable means to collect or attempt to collect any debt from Plaintiff by attempting to collect a debt without complying with Louisiana's registration requirements." (Doc. 1 at 14—15 (citing 15 U.S.C. § 1692f) (internal quotation marks omitted)).)

Lastly, in her sixth cause of action, Plaintiff avers that Defendant violated Section 1692f(1) "by attempting to collect an amount from Plaintiff that is not expressly authorized by the agreement creating the debt nor permitted by law, including by attempting to collect a $2.00" convenience fee for checks by phone "when, upon information and belief, Defendant is not expressly authorized or permitted by law to charge that amount." (*Id.* at 16.)

### III. Discussion

#### a. Standard

##### i. Rule 12(b)(6)

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court expounded upon the *Twombly* standard, explaining that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.' "*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show [n]'—'that the pleader is entitled to relief.' *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Assessing the certainty of facts supporting a plaintiff's claim, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238) (5th Cir. 2009)).

### ii. Rule 56

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the mover bears his burden of showing that there is no genuine issue of fact, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986) (internal citations omitted). The non-mover's burden is not satisfied by "conclusory allegations, by unsubstantiated assertions, or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations and internal quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Further:

> In resolving the motion, the court may not undertake to evaluate the credibility of the witnesses, weigh the evidence, or resolve factual disputes; so long as the

evidence in the record is such that a reasonable jury drawing all inferences in favor of the nonmoving party could arrive at a verdict in that party's favor, the court must deny the motion.

*Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### b. Parties' Arguments

#### i. Defendant's Motion to Dismiss or for Summary Judgment (Doc. 16)

Defendant argues it is entitled to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) or, alternatively, to summary judgment pursuant to Rule 56. In broad strokes, the crux of Defendant's argument is as follows:

> Plaintiff is attempting to expand the scope of the Fair Debt Collection Practices Act, 15 U.S.C. §1692, et seq. Plaintiff's complaint does not allege actionable misconduct by Defendant. She claims she and purported class members were damaged, not from "collection" efforts or deceptive practices, but because: (a) a mistaken belief that under Louisiana law, SOS must be "licensed" (which it is not) and "registered" (which it is) and (b) because SOS offered her a voluntary option, *which she never accepted or even responded to,* i.e, to make payments via a "check by phone" in exchange for a $2.00 "convenience fee," a practice which is lawful under Louisiana law.

(Doc. 16 at 1 (emphasis original).) It notes that Plaintiff "never visited, called or spoke with anyone at SOS", nor did she answer a telephone call from SOS, nor did she communicate with SOS in writing. (*Id.* at 2—3.) Plaintiff did not make payment to SOS by credit card or check, nor did she authorize any check by phone payment to Defendant; she never incurred or paid the $2.00 convenience fee or pay any other fee of any kind to Defendant. (*Id.* at 3; Doc. 16-3 at 7 (citing, *e.g.*, *Szczurek v. Professional Mgmt., Inc.*, 627 Fed. App'x. 57 (3d Cir. 2015); *Benali v. AFNI, Inc.*, 15-3605, 2017 WL 39558 (D. N.J. Jan. 4, 2017)).) Accordingly, Defendant insists that Plaintiff has not adequately alleged an injury sufficient to confer Article III standing to bring suit against it, either individually or on behalf of a putative class. (Doc. 16 at 3.) It insists that its letter did not create the "risk of confusion, deception, or misleading anyone because both the

collection notices correctly state SOS's registered Louisiana name and correct Ohio address."
(*Id.*) It further argues that Plaintiff's claims arising out of the convenience fee are misguided and
"are based on nothing more than 'hyper-technical' mistaken claims of falsehoods and bare
statutory violations" which do not confer standing in this Court. (*Id.*)

Alternatively, Defendant argues that if the Court finds Plaintiff has standing in this
matter, it is nonetheless entitled to dismissal or summary judgment because all of her claims are
based upon a nonexistent licensing requirement and a misunderstanding of Louisiana's
registration requirement. (*Id.*) Defendant explains that the former Louisiana Collection Agency
Regulation Act, La. R.S. 9:3576.1 *et seq.*, which required entities to obtain a license before
acting as a collection agency, was repealed in its entirety on August 15, 2003 through La. Acts.
2003, No. 638, § 1. (*Id.*) Since August 2003, Louisiana has not required its collection agencies to
be licensed; rather, they need only register with the Secretary of State. (*Id.*) Accordingly,
Defendant avers that Plaintiff's claims arising out of SOS's failure to obtain a license fail as a
matter of law. (*Id.*)

Next, Defendant argues that Plaintiff's claims arising out of Defendant allegedly using a
name that is not registered with the Louisiana Secretary of State is misguided. It insists that it
complied with La. R.S. 9:3534.1B, "which simply requires that the collection agency 'register'
with the Secretary of State. [Defendant] properly registered to do business in Louisiana in 2014
under the name 'The HMC Group.'" (*Id.* at 3—4.) Defendant insists it complied with the statute
because both collection letters sent to Plaintiff "correctly identify Defendant as 'The SOS Group
fka *The HMC Group*,' at the correct Ohio address." (*Id.* at 4 (emphasis original).) It further
alleges that "[t]here was no risk of confusion, deception, or misleading anyone, because
Defendant's true business name and original Louisiana d.b.a. name were properly registered

when it mailed the collection notices at issue" and accordingly, Plaintiff's claims concerning the licensing and registration requirements must fail. (*Id.*)

Defendant also argues that Plaintiff's claims that arise out of the $2.00 convenience fee fail as a matter of law for three reasons; first, Plaintiff never paid the fee; second, such fees are lawful in Louisiana; and third, Plaintiff's contract with Ochsner provided for such fees, and she agreed to accept responsibility for same by signing the contract. (*Id.* (citing *Alexandria Emp't Serv., Inc. v. Box*, 282 So. 2d 776, 779 (La. App. 3 Cir. 1973); *State v. Moss*, 48,289 (La. App. 2 Cir. 2013), 127 So. 3d 979, 983; *New Orleans & N. R. Co. v. La. Pub. Serv. Com.*, 164 So. 2d 300, 310 (1964); La. R.S. § 40:1322 B, § 47:532.1, and § 49:316.1.) With respect to the contract argument, Defendant points to language in Plaintiff's contract that states, "I understand that I am responsible for all charges, or portions thereof, not covered by insurance or other sources." (Doc. 16 at 4 (citing 16-1 at 2, 9).) Because the "check-by-phone convenience fee is a 'charge… not covered by insurance or other sources…," for which Plaintiff accepted contractual responsibility," such contract defeats Plaintiff's claim. (*Id.*) Additionally, Defendant insists the imposition of a convenience fee for a check by phone is a lawful practice under Louisiana law, which does not prohibit collection agencies from imposing such fees. (*Id.*) It points to the fact that several Louisiana statutes explicitly authorize state agencies and attorneys to collect similar fees, and therefore, the collection of such fees by a collection agency is tacitly endorsed by Louisiana law. (Doc. 16-3 at 15 (citing La. R.S. § 40:1322 B, § 47:532.1, §49:316.1; La. State Bar Association Rules of Professional Conduct Committee PUBLIC Opinion 12-RPCC-0191 (November 29, 2012)).)

In sum, Defendant insists that nothing in the collection notices it sent to Plaintiff was inaccurate or misleading, to her or the "hypothetical unsophisticated consumer" and that all of

her claims are premised upon erroneous factual or legal notions. (*Id.* at 5; Doc. 16-3 at 7 (citing *Hrivnak v. NCO Portfolio Mgmt.*, 994 F. Supp. 2d 889, 900 (N.D. Ohio 2014)).) It avers that Plaintiff has suffered no concrete injury, and thus lacks Article III standing to sue, and even if she had such standing, she has failed to state a claim upon which relief can be granted. (*Id.*) Accordingly, it insists that her claims must be dismissed or disposed of via summary judgment.

### ii. Plaintiff's Opposition (Doc. 27)

Plaintiff prefaces her opposition by characterizing the case as follows:

> [t]his case is about a consumer who received a collection letter that attempted to collect an additional "convenience fee" not allowed by the contract or by law, and was sent by a debt collector who failed to clearly convey its identity. Defendant's collection letters would, therefore, leave the least sophisticated consumer guessing about important information regarding her debt.

(Doc. 27 at 1.)

In her initial opposition, Plaintiff argues that Defendant's motion for summary judgment is premature and that she needs time to conduct discovery before the Court should consider the evidence attached to Defendant's motion (namely, the contract between Plaintiff and Ochsner).[2] (*Id.* at 4.) She attaches a Rule 56(d) declaration authored by Plaintiff's counsel that sets forth the reasons for the delay and requests additional time to conduct discovery before reaching the merits of Defendant's summary judgment. (*See* Doc. 27-1.)

Turning to the merits of Defendant's motion under Rule 12(b)(6), Plaintiff insists that she has Article III standing because she has suffered an injury in fact. (Doc. 27 at 6.) Specifically, under the FDCPA, "Plaintiff has a legally protected interest in avoiding misleading or unfair attempts to collect the debt." (*Id.* (citing 15 U.S.C. §§ 1692e, 1692f).) She argues that Congress

---

[2] However, as discussed below, in her supplemental memorandum in opposition, Plaintiff states that she has received a copy of the contract through discovery and addresses Defendant's motion for summary judgment on the merits. (*See* Doc. 37.)

enacted the FDCPA precisely to protect consumers from the misleading collection notices that she received, and that the FDCPA's protections are broad and far-reaching to ensure debt collectors cannot use "false, misleading, or unfair practices in connection with the collection, or attempted collection, of any debt." (*Id.* at 7 (citing 15 U.S.C. §§ 1692e, 1692f).) She avers that Defendant's notice, which contained an optional $2.00 convenience fee that it was not permitted to impose, is the exact type of harm the FDCPA was enacted to prevent. (*Id.*) She insists her injury was both concrete (the receipt of the collection notices that violate the FDCPA) and particularized (it happened to her; it "is not hypothetical or generalized"). (*Id.* at 7—8.) Plaintiff cites a litany of cases in which courts have found that Plaintiffs alleging similar FDCPA violations have standing to bring such claims. (*Id.* at 8 (citing *In re Robinson*, 554 B.R. 800, 809–10 (Bankr. W.D. La. 2016); *Sayles v. Advanced Recovery Sys., Inc.*, 14-911, 2016 WL 4522822, at *2 (S.D. Miss. Aug. 26, 2016); *Dunham v. Portfolio Recovery Associates, LLC*, 663 F.3d 997, 1002 (8th Cir. 2011); *Graf v. Pinnacle Asset Grp., LLC*, 14-1822, 2015 WL 632180, at *2 (D. Minn. Feb. 12, 2015); *Baker v. G. C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982)).)

Plaintiff insists that the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) did not overrule four decades of FDCPA caselaw that found plaintiffs with similar claims to those at issue here had standing. (*Id.* at 9.) She claims that "*Spokeo* specifically pointed to misleading communications as an example of injuries-in-fact that create standing" and notes that *Spokeo* cited *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 364 (1982) in support of the proposition that "the deprivation of a right not to be 'the object of a misrepresentation made unlawful' by a statute satisfies the injury-in-fact requirement. (*Id.* at 9—10 (citing *Spokeo*, 136 S. Ct. at 1553 (citing *Havens*)).) She insists that under this jurisprudence, one who "has been the object of a prohibited misrepresentation has 'suffered injury in precisely the form the statute was

intended to guard against, and therefore has standing to maintain a damages claim.'" (*Id.* at 10.)

Furthermore, Plaintiff notes that post-*Spokeo* cases arising under the FDCPA have

"overwhelmingly" concluded that the Plaintiff had standing to bring such claims. (*Id.* at 10—11

(citing, *e.g.*, *Church v. Accretive Health, Inc.*, 15-15708, 654 Fed. App'x 990 (11th Cir. 2016);

*Saenz v. Buckeye Check Cashing of Illinois*, 16-6052, 2016 WL 5080747 at *2 (N.D. Ill. Sept.

20, 2016); *Masson v. Pioneer Credit Recovery, Inc.*, 16-1887, 2017WL 819099, at *3 (E.D. La.

Mar. 2, 2017); *In re Robinson*, 554 B.R. 800, 809–10 (Bankr. W.D. La. 2016); *Sayles*, 14–911,

2016 WL 4522822, at *2–3).)

Plaintiff argues that the FDCPA is a strict liability statute that is "liberally construed in

favor of the consumer" and that jurisprudence directs the Court to evaluate her claims under the

"least sophisticated consumer" standard. (*Id.* at 12—13 (quoting *Gonzalez v. Kay*, 577 F.3d 600,

603 (5th Cir. 2009) (internal citation omitted)).) Turning to the individual claims, Plaintiff avers

that Defendant violated Section 1692f(1) by attempting to collect an amount not expressly

authorized by the contract giving rise to the debt or otherwise permitted by state law. (*Id.* at 13.)

She argues that "as permitted by law" under the FDCPA necessarily means an affirmative

authorization and that the Court cannot infer tacit endorsement by the state as a result of silence

on the matter. (*Id.* at 14 (citation omitted).) She cites a host of district court cases that have

concluded the attempt to collect a convenience fee when not explicitly authorized by the contract

or by state law constitutes a violation of Section 1692f(1). (*Id.* (citing *Weast v. Rockport Fin.,

LLC*, 115 F. Supp. 3d 1018, 1019 (E.D. Mo. July 17, 2015); *Quinteros v. MBI Assocs.,

Inc.*, 999 F. Supp. 2d 434, 436 (E.D.N.Y. 2014); *Shami v. Nat'l Enter. Sys.*, 09–722, 2010 WL

3824151 at *2–4 (E.D.N.Y. Sept. 23, 2010).

Moreover, she argues that the fact that the convenience fee is imposed in only one of the

multiple options for payment does not absolve Defendant of liability under the statute because it has no bearing on the issue "that Defendant attempted to collect a fee it was not legally entitled to collect." Plaintiff distinguishes the cases Defendant relies upon in its motion, arguing that the cases that "allowed a convenience fee did so on the basis that the debt collector was passing through an expense that was charged by an independent entity." (*Id.* at 15 (citing *Lewis v. ACB Bus. Servs., Inc.*, 911 F. Supp. 290, 293 (S.D. Ohio 1996)).) She argues such is not the case here, nor has Defendant alleged such circumstances here. (*Id.*) Simply stated, the collection letter Defendant sent Plaintiff included a $2.00 convenience fee to pay via check by phone; such fee was not expressly authorized by law or by contract, and therefore it violates Section 1692f(1). (*See id.* at 16.) She notes that Defendant has cited no law or jurisprudence that would allow it— as a private entity debt collector— to impose such fee. (*Id.*)

Plaintiff also argues that the fact she did not actually pay the convenience fee is of no consequence because the statute prohibits both actual collection and attempts to collect such fees. (*Id.* at 17 (citation omitted.) She notes this is consistent with the language of the FDCPA itself, because Section 1692f "states that the specifically enumerated sections do not 'limit[] the general application' against the use of 'unfair or unconscionable means to collect **or attempt to collect** any debt.'" (*Id.* at 17—18 (citing 15 U.S.C. § 1692f (emphasis added by Plaintiff)).) Thus, to interpret Section 1692f(1) to apply only to actual collection of fees would run afoul of the plain language of the statute.

Next, turning to Plaintiff's claims arising under Section 1692e, Plaintiff argues that Defendant's actions violate this provision, which prohibits "the use of 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" (*Id.* at 18 (citing 15 U.S.C § 1692e).) She argues that jurisprudence has interpreted this provision broadly

and that it is intended to reach and prevent all abusive debt collection practices that would tend to mislead or deceive a consumer. (*Id.* (citation omitted).) She notes that under subsection 1692e(2)(B), a debt collector may not utilize false representations to collect otherwise lawful fees. (*Id.*) Additionally, subsection 1692e(5) prohibits a debt collector from making any threats to take any action that cannot legally be taken or not intended to be taken, and that under both subsections, an attempt to collect constitutes a violation of the FDCPA. (*Id.*)

Plaintiff also avers that "Defendant violated the FDCPA by attempting to collect under a name it was not registered under at the time it sent collection letters to Plaintiff." She concedes that she inadvertently referenced a "licensing requirement" but that she nonetheless cited the proper and current statute that states that "[a]ny collection agency or debt collector doing business in this state shall register with the secretary of state." (*Id.* at 19 (citing Doc. 1 and La. R.S. § 9:3534.1B).) She notes that at the time Defendant sent her the collection notices, it had not yet changed its name with the Secretary of State, and only did so after the filing of the instant suit on December 8, 2016. (*Id.* (citing Doc. 16 at 1).) The notices identified Defendant as "The SOS Group fka The HMC Group" in one part of the letter and as "The SOS Group" in another part of the same letter (albeit on the same page). She claims that in light of Defendant's failure to register, the notice itself violated Section 1692e(5) because it "threaten[ed] to collect a debt from Plaintiff without being properly registered with the Secretary of State[.]" (*Id.* at 20.) Her argument proceeds that because Defendant did not properly register with the Secretary of State as "The SOS Group," it was not authorized to act as a debt collector under that name, and therefore the collection notices, which she construes to be a threat to collect a debt, violated Section 1692e(5) and La. R.S. 9:3534.1B. (*Id.*)

Moreover, Plaintiff alleges that using a name other than its registered name violated

Section 1692e(14), which "forbids the 'use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.'" (*Id.* at 20—21 (citing *Hartman v. Meridian Financial Services, Inc.*, 191 F. Supp. 2d 1031, 1045 (W.D. Wis. 2002)).) Plaintiff notes that the FDCPA does not define what an entity's "true name" is, but asserts that jurisprudence has interpreted this requirement to mean a name that is not "false, deceptive, or misleading." (*Id.* at 21 (citing *Mahan v. Retrieval-Masters Credit Bureau, Inc.*, 777 F. Supp. 2d 1293, 1298–99 (S.D. Ala. 2011)).) She insists that "the least sophisticated consumer could be misled by the use of any name other than the debt collector's actual corporate name or its registered trade name." (*Id.*)

She argues that against this backdrop, the March 30, 2016 and July 20, 2016 letters, which include the names "The SOS Group" and "The SOS Group fka The HMC Group" are misleading to the least sophisticated consumer because it was not until December 2016 that Defendant registered the name "The SOS Group" with the Secretary of State. (*Id.*) Thus, suggesting that Defendant was "formerly known as The HMC Group" is misleading because at the time it was sending these notices, it was not *formerly* known as The HMC Group; it was then-presently and solely known as The HMC Group. Plaintiff avers that the legislative purpose behind Section 1692e(14) "is to ensure that the consumer can identify the collection agency so that the consumer may research and gain greater information about the entity they are receiving collection letters from" so as to allow the consumer to do her due diligence on the entity. (*Id.* at 22.) She argues that due to Defendant's failure to properly register the name "The SOS Group" with the Secretary of State, the least sophisticated consumer will be left wondering about Defendant's identity and would be unable to ascertain whether Defendant is a legitimate collection agency, thus rendering its failure to register a violation of Section 1692e(14). (*Id.*)

In a similar argument, Plaintiff asserts that Defendant's failure to register the name "The SOS Group" also violated Sections 1692e(10) and 1692f "because using a name other than the one it is registered under is false, misleading, and unfair." (*Id.*) Plaintiff argues that under La. R.S. § 9:3534.1B, a collection agency doing business in Louisiana must register with the Secretary of State; the purpose of this statute is to uphold the strictures of the FDCPA in Louisiana. (*Id.* at 23.) She further argues that aside from protecting consumers, another aim of the FDCPA is to protect collection agencies who do comply with the statute and corresponding state statutes from being competitively disadvantaged by other entities refusal to adhere to the strictures of the statute and their attempts at unfair and illegal collection methods. (*Id.*)

Plaintiff claims that Defendant agrees with her that the purpose of registration statutes "is to enable regulators and consumers alike to easily locate collection agency [sic] should the need arise." (*Id.* (citing Doc. 16-3 at 11).) She claims that using a name other than the one registered with the Secretary of State obfuscates this purpose. (*Id.* at 24.) By representing that Defendant was "fka The HMC Group," Plaintiff insists that the least sophisticated consumer would be unable to locate Defendant. (*Id.*) Therefore, she insists the use of a name other than that which was registered with the Louisiana Secretary of State is unfair, misleading, and deceptive and thus violative of Sections 1692e(10) and 1692f. (*Id.*)

To shore up her prior arguments, Plaintiff insists that Defendant's misrepresentations, as outlined above, are "material" under the FDCPA. (*Id.*) She claims a misrepresentation is "material" if it has the ability to influence a consumer's decision. (*Id.* (quoting *Gomez v. Niemann & Heyer, L.L.P.*, 16-119, 2016 WL 3562148, at *4 (W.D. Tex. June 24, 2016) (internal citations omitted)).) She argues that "[c]ourts have stated that the materiality standard is more like a 'corollary' to the least sophisticated consumer standard and that where 'a statement would

not mislead the unsophisticated consumer, it does not violate the [Act]—even if it is false in some technical sense.'" (*Id.* at 24—25 (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033–34 (9th Cir. 2010) (internal citation omitted)).) She asserts that the materiality standard, like the least sophisticated consumer standard, must be evaluated on an objective basis and that to ask whether the misrepresentation was material to a specific plaintiff impermissibly conflates the objectivity requirement with a subjective inquiry. (*Id.* at 25 (citing, *e.g.*, *Gorman v. Messerli & Kramer, P.A.*, 15-1890, 2016 WL 755618, at *5 (D. Minn. Feb. 25, 2016)).)

Here, Plaintiff claims that Defendant's material misrepresentations are twofold: the first occurred when it represented to consumers that it could lawfully collect a convenience fee for checks made via telephone. (*Id.*) The second material misrepresentation relates to Defendant's represented name on the collection notices ("The SOS Group" or "The SOS Group fka The HMC Group"). (*Id.*) She argues that these misrepresentations "would—and did—impact a consumer's decision making with regard to their debt." (*Id.*) Therefore, such misrepresentations are material because they would affect the least sophisticated consumer's decision making with respect to how to pay his or her debt. (*Id.* at 26.)

### iii. Defendant's Reply (Doc. 30)

As a procedural matter, Defendant argues that Plaintiff has waived her right to a Rule 56(f) delay by responding on the merits, and thus the Court should consider (and grant) its motion for summary judgment. (Doc. 30 at 2.) It argues that Plaintiff's rationale for seeking a delay in ruling on summary judgment—that she needs a copy of the actual contract she executed with Ochsner—is insufficient to meet the standard meriting such delay in this Circuit. (*Id.* (citing *e.g.*, *Wade v. Brennan*, 13-5422, 2015 WL 3849310 (E.D. La. June 22, 2015), *aff'd*, 647 Fed. App'x 412 (5th Cir. 2016)).) This is because under Louisiana law, hospitals are statutorily

obligated to produce a patient's billing records to her upon her request; when the grounds for the delay are reasonably ascertainable to a plaintiff, she is not entitled to such delay. (*Id.*)

Next, turning to the threshold issue of standing, Defendant reiterates that Plaintiff lacks Article III standing to sue under the specific factual circumstances alleged in this case. (*Id.* at 4.) It argues that this Court "and others [must] properly decide standing issues based on pleaded facts, not arguments of counsel, plausibly demonstrating a concrete injury." (*Id.* (citing, *e.g.*, *Meyers v. Nicolet Rest. of De Pere*, 843 F.3d 724 (7th Cir. 2016); *Accent Title, LLC v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 80648, at *6 (M.D. La. June 22, 2015)).) Defendant cites *Landrum v. Blackbird Ent., LLC*, 214 F. Supp. 3d 566 (S.D. Tex. 2016) and *Abercrombie v. Rogers, Carter & Payne, LLC*, 15-2214, 2016 WL 8201965 (W.D. La. Nov. 22, 2016), *report and recommendation adopted in* 2017 WL 489426 (W.D. La. Feb. 5, 2017), which it claims are the only two post-*Spokeo* cases from within the Fifth Circuit that have considered Article III injury in the context of the FDCPA. (*Id.* at 5.) It claims that both cases were dismissed for lack of standing based upon the exact same "bare statutory violations" Plaintiff alleges here, and thus this Court should follow the logic of *Landrum* and *Abercrombie* and dismiss Plaintiff's claims for lack of standing. (*Id.*) It further argues that *Lee v. Verizon Communications, Inc.*, 837 F.3d 523 (5th Cir. 2016), although arising under a violation of ERISA, provides guiding language that the Court must follow here. (*Id.* at 4—5.) It argues that *Lee* stands for the far-reaching proposition that a violation of a statutory right cannot confer standing because the violation "did not establish a concrete harm where there was no allegation of a real risk that [plaintiff's] defined-benefit-plan payments would be affected'". (*Id.* at 4 (quoting *Lee*, 837 F.3d at 530).) It argues all of the cases by Plaintiff are either: nonbinding from other circuits, pre-*Spokeo* cases, and Fifth Circuit cases "predating or not mentioning the contrary [Fifth] Circuit

teachings in *Lee*[.]"

Furthermore, Defendant notes that the majority of Plaintiff's cited cases were decided on a 12(b)(6) motion where the court had to accept the factual allegations in the complaint as true. (*Id.* at 5—6.) In light of Defendant's earlier arguments that Plaintiff is not entitled to a Rule 56(f) delay, it insists that its motion for summary judgment is ripe and the Court should not delay in its consideration of same. Therefore, the allegations in Plaintiff's complaint should no longer be accepted as true. (*Id.* at 6.) Defendant claims that Plaintiff has admitted that she never paid the convenience fee, never interacted with Defendant, and thus she has not demonstrated that she suffered "any concrete, actual, or imminent threat of injury." (*Id.*)

Reaching the merits of Plaintiff's claims, Defendant first argues it is entitled to summary judgment on her claims arising out of the $2.00 convenience fee. (*Id.* at 7.) It notes that the $2.00 convenience fee was never subsumed in the debt owed to Ochsner; at all times, it represented the total amount Plaintiff owed to Ochsner as a freestanding number, and then, separate and distinct from the debt owed, it offered several ways to pay the debt, one which included a $2.00 convenience fee should the consumer desire to pay via check by phone. (*Id.*) There was nothing misleading or deceptive about the notice; it never attempted to conceal the fee or roll it into the debt owed to Ochsner. (*Id.*) Defendant notes that Plaintiff's opposition failed to address the litany of cases that Defendant cites that have held that such fees, when presented in a similar manner to that which is at issue here, are lawful. (*Id.* (citing, *e.g.*, *Benali v. AFNI, Inc.*, 15-3605, 2017 WL 39558 (D. N.J. Jan. 4, 2017). It argues that Plaintiff, like in *Benali*, has not even alleged that she suffered actual or threatened harm; she does not aver that she was confused by the notices, in fact she paid all debts directly to Ochsner; moreover, she failed to allege "that she even had a telephone or a checking account, without which she could not even attempt a 'check

by phone' payment." (*Id.* at 8.) Thus, any alleged harm here is entirely "conjectural or hypothetical[.]" (*Id.*)

Defendant asserts that this Court looks to Louisiana law to determine what constitutes a false, misleading, or unfair practice. (*Id.* at 9 (citing *Duplessie v. Riddle*, 14-442, 2016 WL 2993182 (M.D. La. May 23, 2016). It asserts that convenience fees are entirely lawful under Louisiana law, and asserts that while the power to do so is expressly provided for by statute with respect to governmental agencies, such statutory authorization is not required here "because governmental entities only possess the powers conferred upon them by statute. Louisiana private individual and corporate citizens such as the parties to this litigation, on the other hand, need no statutory authority to contract to exercise their constitutional right to voluntarily contract with respect to any lawful subject matter." (*Id.*) Further, it insists that even the least sophisticated consumer would understand that the $2.00 convenience fee is contingent upon the payment of check by phone, and insists the letter was not misleading or deceptive, or would it induce Plaintiff (or the least sophisticated consumer) "to collect a fee not yet demanded, incurred, or owed." (*Id.*) It avers that the offering of several options of payment, where only one incurs a convenience fee, "is clearly an 'available non-abusive collection method' which Congress intend[ed] to preserve and not circumscribe by enacting the FDCPA." (*Id.* (citing 15 U.S.C. §1692(b)).)

With respect to Plaintiff's claims arising out of Defendant's use of the name "The SOS Group" or "The SOS Group fka The HMC Group," Defendant notes that all notices sent to Plaintiff reflect the proper and registered mailing address, and that they provided a toll-free telephone number to reach its representatives. (*Id.* at 10.) Therefore, according to Defendant, there was nothing misleading or deceptive about the way it portrayed its name because "[s]tate

regulators have never questioned SOS's registered d.b.a.'s." (*Id.*) Defendant argues that while "true name" is not defined in the FDCPA, the Supreme Court has "opined that this provision is intended to prohibit use of names that are false, deceptive, or misleading." (*Id.* at 11 (citing *Sheriff v. Gillie*, 136 S. Ct. 1594, 1600-1602 (2016)).) The FDCPA does not, however, proscribe other available non-abusive collection methods, which is what Defendant insists it employed in its collection notices to Plaintiff. (*Id.*)

Defendant encourages the Court to borrow the FTC's position on the issue, which "is that a debt collector's 'true name' encompasses not only its formal corporate name, but also the name under which it usually transacts business." (*Id.* at 12.) Against this backdrop, Defendant argues its "true names" include "not only its formal corporate name (Head Mercantile Co., Inc.) but also the name under which it originally registered in Louisiana (Head Mercantile Co., Inc. d.b.a. The HMC Group) and its current, updated registered name (Head Mercantile Co., Inc. d.b.a. the SOS Group)." (*Id.*) Defendant calls Plaintiff's claim that a consumer would be unable to identify and locate Defendant based upon the misrepresentations in the notice relating to its name is "disingenuous, at best." (*Id.*) It notes that despite the later addition of "The SOS Group" to its registered name, at all times, its Ohio address and toll free number have remained unchanged, and therefore, Plaintiff and others who received the collection notice would have been able to easily identify Defendant. (*Id.*)

Turning to Plaintiff's argument regarding the materiality of Defendant's alleged misrepresentations, Defendant concedes that the least sophisticated consumer is the proper standard against which the Court must evaluate Plaintiff's claims. However, it insists that this standard "is not one 'tied to the very last rung on the [intelligence or] sophistication ladder.'" (*Id.* at 13 (quoting *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004)

(internal quotation marks and citation omitted)).) Thus, collection letters that lack any misrepresentation or false or deceptive language in connection with the collection of the debt are not actionable in the Fifth Circuit or any other jurisdiction. (*Id.* (citing *e.g.*, *Peter v. GC Servs. L.P.*, 310 F.3d 344, 350 (5th Cir. 2002)).) Defendant reiterates the fact that the collection notice never incorporated the convenience fee into the total debt owed, which always reflected the balance the consumer owed to the third party (here, Ochsner), and that the $2.00 convenience fee was clearly a separate and optional charge connected to one of the several forms of payment offered in the notice. (*Id.* at 14.) In sum, Defendant avers that "[P]laintiff's own acts and omissions corroborate that there nothing materially misleading to a hypothetical unsophisticated consumer in either notice." (*Id.* at 15.)

### iv. Plaintiff's Supplemental Opposition (Doc. 37)

In her supplemental memorandum in opposition, Plaintiff represents that she obtained the document she requested through discovery (i.e. the actual contract she executed with Ochsner, as opposed to the pro forma Ochsner contract Defendant attached to its motion for summary judgment), and is prepared to address the merits of Defendant's Rule 56 motion for summary judgment. (Doc. 37 at 1.) She reiterates her argument that Defendant has failed to cite to any jurisprudential or statutory authority to allow it—a private collection agency; not a government agency, not a lawyer—to charge a convenience fee under Louisiana law. (*Id.* at 2.)

Additionally, now that she has had opportunity to review the contract between her and Ochsner, Plaintiff avers that the contract does not expressly authorize the imposition of the convenience fee. (*Id.*) Accordingly, with no express provision in law or in the contract, Plaintiff insists that the imposition of the convenience fee violates the FDCPA and that "Defendant is not entitled to summary judgment on Plaintiff's claims that Defendant violated 15 U.S.C. §§

1692f(1), 1692e(2)(B), 1692e(5), and 1692e(10)." (*Id.* (citing, *e.g.*, *Weast*, 115 F. Supp. 3d at 1022).) Specifically, she cites the provision of the contract that provides for her acceptance of financial responsibility and notes that it "bind[s] Plaintiff only to charges made for the 'services and supplies' that Plaintiff, as a 'patient' of the hospital, receives[.]" (*Id.* (citing Doc. 37-1 at 3).) She argues that this provision of the contract speaks solely to the charges imposed by the original creditor, Ochsner, and is silent on charges arising out of Defendant's debt collections. (*Id.* at 3.) She maintains that a plain reading of the contract clearly indicates that the "services and supplies" referenced therein relate solely to the services and supplies *Ochsner* provides her as a patient. (*Id.*) She insists this is insufficient to entitle Defendant to summary judgment on her claims, as judgment would only be appropriate in the face of express authorization in the contract that the debt collection agency is permitted to charge a convenience fee in connection with the collection of the debt. (*Id.*) In the absence of such express authorization, she avers that her claims must survive summary judgment. (*Id.*)

### v. Defendant's Supplemental Reply (Doc. 38)

Defendant attempts to construe Plaintiff's silence regarding the name registration claims in her supplemental opposition as a tacit concession that the claims are meritless. (Doc. 38 at 1.) Moreover, with respect to all claims, Defendant reasserts its position that Plaintiff has failed to demonstrate "an injury in fact that is concrete and actual or imminent", and therefore it is entitled to summary judgment on her claims against it. (*Id.* (citing *Abbott v. BP Expl. & Prod., Inc.*, 851 F.3d 384, 388 (5th Cir.2017)).) In support, Defendant argues:

> Ms. McLain postulates that HMC violated the FDCPA merely by stating that 'a $2.00 convenience fee applies to checks by phone' among other no-cost payment method options in two dunning notices, which she utterly ignored. Nowhere are we told how this caused her actual or potential real-world harm. This omission prompts the same rhetorical question posed, and mandates the same answer voiced by the Seventh Circuit in *Meyers v. Nicolet Rest. of De Pere, LLC*, [843

F.3d 724, 728–29 (7th Cir.2016), cert. denied, 137 S. Ct. 2267 (U.S. 2017),] namely, '[t]his case asks whether the violation of a statute, completely divorced from any potential real-world harm, is sufficient to satisfy Article III's injury-in-fact requirement. We hold that it is not.' The Fifth Circuit, [*Verizon Commc'ns*, 837 F.3d at 530] this Court, [*Abercrombie*, 2016 WL 8201965, at *4 and *13 n.4; *see also Accent Title, LLC v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 80648, at *6 (M.D. La. June 22, 2015),] other Fifth Circuit district courts, [Dyson v. Sky Chefs, Inc., 2017 WL 2618946, at *3-7 (N.D. Tex. June 16, 2017); Landrum v. Blackbird Enterprises, LLC, 214 F.Supp.3d 566, 570 (S.D. Tex.2016),] and others[*see, e.g., Gubala v. Time Warner Cable, Inc.*, 846 F.3d 909, 2017 U.S. App. LEXIS 1058, 2017 WL 243343, at *4 (7th Cir. Jan. 20, 2017); *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 583 (6th Cir. 2016),] all agree. Ms. McLain's FDCPA claims are conceptual, theoretical and completely divorced from any proof of any actual or potential real-world harm. Thus, she lacks Article III standing.

(*Id.* at 1—2.)

Defendant avers that in Louisiana checks by phone are technically known as "remotely-created checks", and that they are not only lawful, but endorsed as beneficial to consumers and debt collectors alike. (*Id.* at 3.) It insists that these fees are not abusive to consumers, and to prohibit them would serve to disadvantage Defendant. (*Id.*) It argues that private citizens and businesses are constitutionally guaranteed the right to contract with one another for a lawful purpose; therefore, entities such as Defendant are free to offer a voluntary convenience fee that the debtor may choose to accept or reject. (*Id.* at 3—4.)

Next, Defendant contends that when Plaintiff signed the contract with Ochsner, she "expressly agreed with Ochsner *and Defendant* that she was responsible for 'all charges, or portions thereof, not covered by insurance or other sources.'" (*Id.* at 4.) It notes that on at least four occasions, Plaintiff entered into agreements with Ochsner (attached to Defendant's reply as "Exhibit A"; Doc. 38-1), which rendered Ochsner Plaintiff's statutory creditor. (*Id.*) It insists that the contracts between Plaintiff and Ochsner obligated Plaintiff to pay whatever debts she incurred as a consequence of the medical services provided by Ochsner, irrespective of whether

that debt is owed to Ochsner directly, or to a third party debt collector on behalf of Ochsner (i.e.

Defendant). (*Id.*) It insists the convenience fee is lawful under Louisiana law because "[a]

referral to a collection agency creates a collection assignment relationship. Under such an

arrangement, the collection agency steps into the shoes of and acquires the rights of the creditor,

even though the creditor retains equitable ownership of the underlying account." (*Id.* at 5 (citing

*Telerecovery of La, Inc. v. Major*, 98-1191 (La. App. 1 Cir. 5/18/99), 734 So. 2d 947, 948, *writ*

*denied*, 99-2293 (La. 11/12/99) 750 So. 2d 196; *Gibbs v. Giering*, 183 So. 2d 459, 461-62 (La.

App. 3 Cir. 1966).)

In sum, Defendant insists that its "purely optional convenience fee offer was, therefore,

not a 'false, deceptive or []misleading' act as contemplated by §1692e(2)(B)." (*Id.* at 5.) It

further argues that its "lawful *offer* is neither a ['jthreat to take action that cannot legally be

taken' as contemplated by §1692e(5) or a 'use of any false representation or deceptive means to

collect or attempt to collect any debt….' according to §1692e(10)." (*Id.*)

### c. Analysis[3]

#### i. Article III Standing[4]

The issue of standing presents a "threshold jurisdictional question" in any suit filed in

federal district court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The

requirement that a party have standing to bring suit flows from Article III of the Constitution,

which limits the scope of the federal judicial power to the adjudication of "cases" or

---

[3] Given that Defendant has filed both a 12(b)(6) motion to dismiss and a Rule 56 motion for summary judgment, the Court will deviate between these two standards. To the extent that a claim may be disposed of via the 12(b)(6) standard, the Court will dismiss accordingly. If a claim survives the 12(b)(6) standard, the Court will also evaluate it under the lens of Rule 56 to ensure full treatment on the merits of both of Defendant's motions.

[4] Although challenges to Article III standing are typically brought through a 12(b)(1) motion for lack of subject matter jurisdiction, the Court declines to dwell on the inartful styling of the motion and reaches the substance of Defendant's contentions. s*ee Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) (internal citation omitted) ("Unlike a dismissal for lack of constitutional standing, which should be granted under Rule 12(b)(1), a dismissal for lack of prudential or statutory standing is properly granted under Rule 12(b)(6).").

"controversies." U.S. CONST. art. III, § 2. Standing consists of three elements: (1) the plaintiff must have suffered an "injury-in-fact," which is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent"; (2) the injury must be "fairly traceable" to the challenged conduct of the defendant; and (3) it must be likely that plaintiff's injury will be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing each element of standing. *Spokeo*, 136 S. Ct. 1540 at 1547. To carry this burden, the plaintiff must support each element with the "manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561.

As the most recent statement from the Supreme Court on the issue of standing in relation to the concrete injury requirement, *Spokeo*, a case dealing with standing under the Fair Credit Reporting Act ("FCRA"), guides this Court's analysis in the instant matter. However, at the outset, it is important to note that *Spokeo* did not rule on what does or does not constitute a concrete injury, even in the context of the FCRA; it simply held that to have standing, a plaintiff must allege an injury that is both concrete and particularized. 136 S. Ct. at 1548. To that end, a "particular" injury is one that "affect[s] the plaintiff in a personal and individual way" and the "concrete" requirement requires the injury to be "de facto," in other words, it must actually exist, and not be hypothetical or conjectural. *Id.* at 1548. Nonetheless, "concrete" is not "necessarily synonymous with 'tangible.' Although tangible injuries are perhaps easier to recognize [the Court has] confirmed in many [ ] previous cases that intangible injuries can nevertheless be concrete." *Id.* at 1549 (citing *Pleasant Grove City v. Summum,* 555 U.S. 460 (2009); *Church of Lukumi Babalu Aye, Inc. v. Hialeah,* 508 U.S. 520 (1993)).

Furthermore, *Spokeo* held that a plaintiff must allege a concrete and particularized injury that goes beyond a "bare procedural violation, divorced from any concrete harm" *in the context of the FCRA* because a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. This is particularly important to the issue before the Court because the FCRA significantly differs from the FDCPA in ways that make a meaningful difference in whether a bare procedural violation of the statute—without more—gives rise to a "concrete" injury.[5] In spite of its language limiting the instances in which a procedural violation could constitute a concrete injury, even *Spokeo* recognized that such violation of a procedural right granted by statute "can be sufficient in some circumstances to constitute injury in fact" and in such instances, "a plaintiff need not allege any *additional* harm beyond the one identified by Congress." 136 S. Ct. at 1544 (emphasis original); *see also LaVigne v. First Cmty. Bancshares, Inc.*, 215 F. Supp. 3d 1138, 1143 (D.N.M. 2016) (discussing *Spokeo*).

The Fair Debt Collection Practices Act was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA is intended "to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists." *Baker v. G. C. Servs. Corp.*, 677 F.2d 775,

---

[5] As summarized by the Western District, it is important to understand why certain elements of *Spokeo* do not necessarily translate well outside the context of the FCRA because:

> [i]n *Spokeo*, the Supreme Court observed that, by enacting the Fair Credit Reporting Act ("FCRA"), Congress clearly sought to curb the dissemination of false information by adopting procedures to decrease the risk. *Spokeo, supra*. However, a violation of one of the FCRA's procedural requirements may result in no harm. *Id.* The Court gave two examples: 1) a consumer agency that fails to provide required notice to a user, but the information is entirely accurate, and 2) a consumer reporting agency provides inaccurate information such as an incorrect zip code, that, without more, proves difficult to imagine how it could work any concrete harm. *Id.*

*Abercrombie v. Rogers, Carter & Payne, LLC*, 15-2214, 2016 WL 8201965, at *3 (W.D. La. Nov. 22, 2016).

777 (9th Cir. 1982); *see also Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

In the post-*Spokeo* world, courts have consistently found that plaintiffs bringing claims similar to Plaintiff's under the FDCPA have Article III standing. The Fifth Circuit has had only one occasion to consider the issue of standing under the FDCPA in the post-*Spokeo* context, and although a different provision of the statute was at issue there, the Court held that the district court properly found that the plaintiff had Article III standing. *Sayles v. Advanced Recovery Sys., Inc.*, 865 F.3d 246, 16-60640, 2017 WL 2872343, at *3 (5th Cir. July 6, 2017). Similarly, district courts around Louisiana have denied Rule 12(b)(1) motions based upon insufficient Article III injury in the context of FDCPA violations under the *Spokeo* standard, *see Reed v. Receivable Recovery Servs., LLC*, 16-12666, 2017 WL 1399597, at *13 (E.D. La. Apr. 19, 2017), and held that there is Article III "standing when a Plaintiff received collection letters allegedly in violation of the FDCPA." *Masson v. Pioneer Credit Recovery, Inc.*, 16-1887, 2017 WL 819099, at *3 (E.D. La. Mar. 2, 2017) (citing *Tourgeman v. Collins Fin. Servs.*, 755 F.3d 1109, 1116 (9th Cir. 2014)); *but see Abercrombie v. Rogers, Carter & Payne, LLC*, 15-2214, 2016 WL 8201965 (W.D. La. Nov. 22, 2016) (finding no Article III injury for a claim arising out of an alleged misstatement of the debtor's rights under the FDCPA where the plaintiff never alleged that he could suffer harm as a result of the alleged misstatements).

This is consistent with other courts that have found Article III standing arising out of violations of the FDCPA. *See Tourgeman*, 755 F.3d 1109, 1116 (9th Cir. 2014) ("the violation of [the] right not to be the target of misleading debt collection communications … constitutes a

cognizable injury under Article III); *Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp. 3d 656, 671 (D. N.J. 2017) ("Deprivation of the right to be free from false or deceptive debt collection information, with the attendant risk of economic injury, is an interest recognized by the [FDCPA], and one reasonably rooted in the traditions of the common law. Under *Spokeo*, it may give rise to Article III standing."); *Hayes v. Convergent Healthcare Recoveries, Inc.*, 14-1467, 2016 WL 5867818, at *4 (C.D. Ill. Oct. 7, 2016)("a violation of the right under § 1692e to be free from false or misleading representations from debt collectors creates a harm, or risk of harm, sufficient to meet the requirement of concreteness."); *Quinn v. Specialized Loan Servicing, LLC*, 16-2021, 2016 WL 4264967, at *4 (N.D. Ill. Aug. 11, 2016)(citing cases rejecting challenges to standing based on *Spokeo* in FDCPA cases); *Weast v. Rockport Fin., LLC*, 115 F. Supp. 3d 1018, 1021 (E.D. Mo. 2015) ("The FDCPA is a broad remedial statute and its terms are to be applied in a 'liberal manner'"; to establish FDCPA violation, a plaintiff need only show: "(1) plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt qualifies as a debt collector under the Act; and (3) the defendant has engaged in a prohibited act[.]").

The Court finds these cases persuasive. As explained by the Eastern District,

[a] lthough the Court may conceive of an instance in which an allegation of a bare violation of the FDCPA's procedural disclosure requirements may not support standing, [*see Abercrombie*, 2016 WL 8201965] where, as here, the plaintiff alleges that he has been victimized by harassment and false or misleading debt collection communications, he seeks to vindicate his substantive right to be free from debt collector abuse, which sufficiently alleges a concrete and particularized injury-in-fact. [Plaintiff]'s alleged injury is more than a bare procedural violation; it is the type of concrete injury Congress sought to eradicate in enacting the FDCPA. [Plaintiff] has Article III standing. [Defendant]'s motion to dismiss for lack of standing must be denied.

*Reed*, 2017 WL 1399597 at *6 (internal footnotes omitted).

In this case, Plaintiff has alleged sufficient injury to confer standing: she received a debt

collection that she alleges to be in violation of the FDCPA in two material respects: first, that it was deceptive and misleading because it failed to clearly identify the sender, and second, that it charged a voluntary convenience fee in connection with one method of collection of payment when the collection of same was not authorized by law or contract. When weighed against the backdrop of the legislative purpose of the FDCPA, it is clear that the harm alleged is the exact type of harm Congress intended to prevent. Accordingly, Plaintiff has standing to bring her claims, and insofar as Defendant's motion to dismiss seeks dismissal of Plaintiff's claims on the basis that she lacks standing, the motion is denied.

### ii. Plaintiff's claims under 15 U.S.C. § 1692e

When evaluating a claim under this subsection or any other subsection of 15 U.S.C. § 1692, courts "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004)) (internal quotations omitted). The Court must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Id.* "At the same time we do not consider the debtor as tied to the very last rung on the intelligence or sophistication ladder." *Goswami*, 377 F.3d at 495. The purpose of this standard is to protect "all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices" and to protect "debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Kay*, 577 F.3d at 603.

In general, section 1692e, titled "False or misleading representations" makes it unlawful for a debt collector to "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e "bars debt

collectors from deceiving or misleading consumers; it does not protect consumers from fearing the actual consequences of their debts." *Sheriff v. Gillie*, 136 S. Ct. 1594, 1603 (2016). Thus, "to determine whether a statement is misleading normally 'requires consideration of the legal sophistication of its audience.'" *Midland Funding, LLC v. Johnson*, 137 S. Ct. 1407, 1413 (2017) (citing *Bates v. State Bar of Ariz.*, 433 U.S. 350, 383 n. 37 (1977)).

### 1. Count One: 15 U.S.C. § 1692e(2)(B)

Section 1692e(2)(B) makes it unlawful for a debt collector to falsely represent "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2)(B). Plaintiff alleges that Defendant violated Section 1692e(2)(B) by "falsely representing that it could legally charge a $2.00 convenience fee for payments made by check over the telephone and for falsely representing that it was entitled to collect the Debt from Plaintiff when they are not licensed in the state as required under Louisiana state law."[6] (Doc. 1 at 9.)  Thus, Plaintiff essentially alleges two independent bases to support her Section 1692e(2)(B): (1) the imposition of a $2.00 convenience fee not expressly authorized by state law or the contract giving rise to the debt violates this provision, and (2) the failure to comply with the state of Louisiana's registration requirements renders Defendant unable to lawfully act as a debt collector whatsoever within the state. The Court will address each of these in turn.

### a. The convenience fee claim

First, with respect to Plaintiff's claim arising out of the $2.00 convenience fee, Defendant avers it is lawful because 1) Plaintiff never paid the fee; 2) such fees are lawful under Louisiana law, as suggested by various statutes conferring authority upon governmental agencies to impose

---

[6] Plaintiff admits in briefing that Louisiana does not impose a licensing requirement, but rather a registration requirement.

convenience fees in connection with collection of debts; and 3) Plaintiff's contract with Ochsner provided that she would accept responsibility for payment of all fees not covered by insurance.

As an initial matter, Defendant's contention that Plaintiff never paid the fee is inapposite to the claim because that is not the critical inquiry; "rather, the question is whether the Convenience Fee language 'violates the statute because it falsely implies that Defendant is entitled to collect the processing fee in the first place.'" *Thomas v. John A. Youderian Jr., LLC*, 232 F. Supp. 3d 656, 678 (D. N.J. 2017) (quoting *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 439 (E.D.N.Y. 2014)). This is consistent with other courts interpreting the statute, which have held that in order to establish a violation under the FDCPA, a plaintiff must only demonstrate the following: (1) that she has been the object of collection activity arising from a consumer debt; (2) the defendant attempting to collect the debt is a "debt collector" as defined by the FDCPA; (3) the defendant has engaged in an act prohibited by the FDCPA. *Weast*, 115 F. Supp. 3d at 1021. To state an actionable claim under the FDCPA, a plaintiff need not allege that she actually made payment on the fee or that she actually believed and relied upon the misrepresentations that constitute the violation. *See Tourgeman*, 755 F.3d at 1116. Accordingly, the fact that Plaintiff did not actually pay the convenience fee does not, in and of itself, entitle to Defendant to relief under either the 12(b)(6) or Rule 56 standard.

Next, Defendant claims that the imposition of such fees is lawful under Louisiana law. However, Defendant fails to cite any support—jurisprudential or otherwise—for the proposition that it, a *private debt collection entity*, is authorized under Louisiana law to charge and collect a convenience fee for specific methods of payment. While it cites statutory authority for lawyers to collect legal fees and for *government entities* to collect convenience fees under Louisiana law, and somehow suggests that these statutes (or the lack of prohibitory statutes) ipso facto apply to

it as a private entity, this argument does not hold water.[7] The canon of *expressio unius est exclusio alterius* is particularly instructive here.[8] "This canon holds that 'expressing one item of a commonly associated group or series excludes another left unmentioned.'" *Coastal Conservation Ass'n v. U.S. Dep't of Commerce*, 846 F.3d 99, 106 (5th Cir. 2017) (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)). The Court believes that the legislature was well-versed in the FDCPA when it enacted state laws regulating private debt collection agencies, and if it had wished to confer the right to impose convenience fees upon them, it would have done so through the passage of unambiguous legislation. That it declined to do so militates in favor of denial of both of Defendant's motions on this point.

Finally, with respect to Defendant's contention that the imposition of the convenience fee is expressly authorized under the contract between Plaintiff and Ochsner, this argument is similarly unavailing. The contract contained the following provision:

> **G. Acceptance of Financial Responsibility:**
> I agree that in consideration of the services and supplies that have been or will be furnished to the patient, I am hereby obligated to pay all charges made for or on the account of the patient according to the standard rates (in effect at the time the services and supplies are delivered) established by Ochsner, including its Patient Financial Assistance Policy to the extent it is applicable, I understand that I am responsible for all charges, or portions thereof, not covered by insurance or other sources. Patient refunds will be distributed only after balances at all Ochsner facilities are paid.

(Docs. 16-1 at 9; 37-1 at 3.) As evidenced by a plain reading of the contract, it does not expressly envision the imposition of a convenience fee; it does not even mention the possibility that one might be incurred with certain forms of payment of the debt. This is insufficient as a matter of

---

[7] By that logic, a private person could also seek to collect state taxes because a Louisiana statute vests a government agency with the power to collect state taxes.

[8] The canon is only applicable where "it is fair to suppose that Congress considered the unnamed possibility and meant to say no to it." *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013) (quoting *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003)). The Court finds that such is the case here, and the canon is properly applied to Defendant's contentions on this issue.

law to entitle Defendant to lawfully impose such fees under the FDCPA. *See, e.g., Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999) ("If state law neither affirmatively permits nor expressly prohibits services charges, a service charge can be imposed only if the customer expressly agrees to it in the contract."); *see also Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 408 (3d Cir. 2000) (quoting *Tuttle*). In reaching the same conclusion, the Second Circuit in *Tuttle* relied upon the following language promulgated by the Federal Trade Commission Staff Commentary on the FDCPA, which provides:

> A debt collector may attempt to collect a fee or charge in addition to the debt if either (a) the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or (B) the contract is silent but the charge is otherwise expressly permitted by state law. Conversely, *a debt collector may not collect an additional amount if* either (A) state law expressly prohibits collection of the amount or (B) *the contract does not provide for collection of the amount and state law is silent*.

*Statements of Gen. Policy of Interpretation Staff Commentary on the F.D.C.P.A.*, 53 Fed. Reg. 50,097-02, 50,108 (1988) (emphasis added).

Accordingly, the Court denies both of Defendant's motions on this claim.

### b. The registration and licensing claim

Under Louisiana law, "[a]ny collection agency or debt collector doing business in this state shall *register* with the secretary of state. The secretary of state shall promulgate rules and regulations necessary to provide for the registration required by this Section." La. R.S. 9:3534.1(B) (emphasis added). The former statute, La. R.S. 9:3576.1 *et seq.*, which required collection agencies doing business in Louisiana to be licensed to conduct such business, was repealed in its entirety on August 15, 2003 through La. Acts. 2003, No. 638, § 1. Plaintiff cites no support for her allegation that Defendant must be licensed to conduct debt collection services in the state. In fact, she concedes in her opposition to Defendant's motions that she incorrectly

referenced a "licensing requirement" when she intended to mean a "registration requirement." (Doc. 27 at 19, n.1.)

Defendant attached to its motion the original registration filing it submitted to the Secretary of State dated June 4, 2014. (Doc. 16-1 at 6.) It also attached the December 8, 2016 amendment to its registration which reflects that on that date, Defendant changed its registered name with the Secretary of State from "The Head Mercantile Co., Inc. d/b/a The HMC Group" to reflect its d/b/a name of "The SOS Group." (*Id.* at 5—7.) Accordingly, at all relevant times, Defendant was properly registered to do business as a collection agency within the state of Louisiana. While the use of a previously unregistered d/b/a name ("The SOS Group") may give rise to liability under another provision of the statute, Plaintiff cannot maintain a claim under Section 1692e(2)(B) that Defendant falsely represented that it could lawfully do business within the state.

Because the Court must consider documents outside the pleadings, it will dispose of this claim via summary judgment. In other words, looking at all the evidence under a totality of the circumstances, there is no genuine issue of material fact, as it was clear that the use of the "The SOS Group fka The HMC Group" on the collection notice does not equate to a false representation as to Defendant's right to collect a debt under Louisiana law under Section 1692e(2)(B), because Defendant was legally registered and thus entitled to act as a collection agency in Louisiana. Accordingly, Defendant is entitled to summary judgment on this claim.

### 2.  Count Two: 15 U.S.C. § 1692e(5)

Section 1692e(5) proscribes debt collectors from "threat[ening] to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Plaintiff's argument under this subsection is premised on her arguments under Sections 1692e(2)(B) and

1692f(1), because she claims that the collection notices, in and of themselves, threaten to take action that is not lawful under Louisiana law because Defendant failed to properly register with the Secretary of State and thus cannot lawfully operate as a collection agency under the name "The SOS Group" or "The SOS Group fka The HMC Group."

The Court has conducted an independent analysis of the collection notices and finds no language suggesting that Defendant threatened to take any illegal action. In light of the Court's ruling on Section 1692e(2)(B), *supra*, and the absence of any other suggestively threatening language in the collection notices, the Court finds that this claim can be properly disposed via summary judgment. Accordingly, insofar as its motion seeks summary judgment of Plaintiff's claim under this subsection, the motion is granted.[9]

### 3. Count Three: 15 U.S.C. § 1692e(10)

Section 1692e(10) makes it unlawful for a debt collector to make "use of any false representation or deceptive means to collect or attempt to collect any debt or obtain information concerning a consumer." Plaintiff contends that the use of the name "The SOS Group" or "The SOS Group fka The HMC Group" violates this subsection "because using a name other than the one it is registered under is false, misleading, and unfair." (Doc. 27 at 21.) She insists this was a material misrepresentation that would mislead the least sophisticated consumer, and thus is actionable under Section 1692e(10). Defendant responds that its collection notices could not be misleading because they reflect its proper registered mailing address, a current telephone number at which to reach its representatives, and reflected that the SOS Group is "fka The HMC Group."

The debt collector's representations must be analyzed by considering them from the

---

[9] Although the Court did not need to look outside the pleadings to dispose of this complaint, and therefore could have granted the 12(b)(6) motion without reaching the Rule 56 motion, because disposition of this claim is necessarily tied to the Court's ruling on the 1692e(2)(B) claim, which required the Court to consider matters outside the pleadings, this claim too is properly disposed of on summary judgment.

perspective of a consumer with below-average sophistication or intelligence. *Taylor v. Perrin,*
*Landry, deLaunay & Durand,* 103 F.3d 1232, 1236 (5th Cir. 1997). The least sophisticated
consumer standard is an objective one; in other words, this specific plaintiff need not prove that
*she* was actually confused or misled, only that the proverbial least sophisticated consumer would
be so misled. *Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st Cir. 2014)
("[T]he FDCPA does not require that a plaintiff actually be confused."). Whether the least
sophisticated consumer would be misled by a particular communication is an issue of law
properly resolved on a 12(6)(6) motion. *Thomas*, 232 F. Supp. 3d at 672 (citation omitted).

Section 1692e also contains a materiality requirement, but it "is simply a corollary of the
well-established 'least sophisticated debtor' standard." *Jensen v. Pressler & Pressler*, 791 F.3d
413, 418 (3d Cir. 2015). "[A] statement in a communication is material if it is capable of
influencing the decision of the least sophisticated debtor." *Id.* at 420–21. This is a low hurdle to
meet. *See Thomas*, 232 F. Supp. 3d at 672. "[T]he materiality requirement, correctly applied,
effectuates the purpose of the FDCPA by precluding only claims based on hypertechnical
misstatements under § 1692e that would not affect the actions of even the least sophisticated
debtor." *Id.* at 422.

Here, the central inquiry before the Court is whether the least sophisticated consumer
would be misled by receipt of a letter that states in one part "The SOS Group" and on the same
page, "The SOS Group fka The HMC Group" and that directs checks to be made out to "The
SOS Group" when the only name under which Defendant was registered to do business in
Louisiana at the time it sent these letters was "The HMC Group." The Court concludes that the
least sophisticated consumer receiving Defendant's collection notice could be deceived or misled
as to its true identity. Indeed, the letter directs the consumer to "Make Checks Payable To: The

SOS Group" and identifies the sender's address in two locations on the same page, one which reads simply "The SOS Group" and one which reads "The SOS Group fka The HMC Group." (Docs. 16-1 at 9; 37-1 at 3.) However, at the time Plaintiff received the collection notices, Defendant was only registered to do business in Louisiana as "The HMC Group." This could create confusion in the mind of the least sophisticated consumer. The Court does not presume that the unsophisticated consumer would understand the meaning of "fka" or that s/he would understand that The SOS Group and The HMC Group are one and the same. While the Court recognizes that Defendant uses the same address under both names on the notice, it finds there is a genuine issue as to material fact as to whether that alleviates the confusion the duplicitous names could cause in the mind of the unsophisticated consumer.

The Court holds that under a 12(b)(6) standard, Plaintiff has stated a plausible claim for relief under Section 1692e(10). Further, the Court holds that a genuine issue of material facts exists so as to preclude summary judgment. Accordingly, insofar as Defendant's motions seek dismissal or summary judgment on this claim, the motions are denied.

#### 4. Count Four: 15 U.S.C. § 1692e(14)

Under subsection 1692e(14) "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization" is a false, deceptive or misleading practice that violates the statute. 15 U.S.C. § 1692e(14). The term "true name" is not defined in the FDCPA. However, courts have opined that this provision is intended to prohibit use of names that are false, deceptive or misleading. The U.S. Supreme Court recently addressed the issue, stating "[a]lthough the FDCPA does not say what a 'true name' is, its import is straightforward: A debt collector may not lie about his institutional affiliation." *Sheriff v. Gillie*, 136 S. Ct. 1594, 1602 (2016). Furthermore, as a New Jersey District court describes:

> The Federal Trade Commission has interpreted the provision to mean that a debt collector "may use its full business name, the name under which it usually transacts business, or a commonly-used acronym. When the collector uses multiple names in its various affairs, it does not violate [§ 1692e(14)] if it consistently uses the same name when dealing with a particular customer." Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,097–02, 50,107 (Dec. 13, 1988). Alternatively, at least one court has held that a business's true name includes the name in which it has a license to conduct business under state law. *See Kizer v. Am. Credit & Collection*, No. B–90–78, 1990 WL 317475, at *6 (D. Conn. Dec. 17, 1990). Despite the ambiguity at the periphery of analysis of what is a true name, § 1692e(14) at its core clearly prohibits the use of a name that is neither the collector's actual corporate name nor its trade name, licensed or otherwise. *See Peter v. GC Servs. L.P.*, 310 F.3d 344, 352 (5th Cir. 2002) (holding debt collector's use of "United States Department of Education" on outside envelope violated § 1692e(14)).

*Boyko v. Am. Int'l Grp., Inc.*, 08-2214, 2009 WL 5194431, at *6-7 (D. N.J. Dec. 23, 2009). The

*Boyko* court also recognized that "[g]iven however that the purpose of the provision is to prevent

fraud and misleading representations, and given that Congress used an exacting term like 'true

name,' the Court is convinced that § 1692e(14) requires debt collectors to use a precise, official

name when conducting debt collection activities." *Id.* at *7.

The only reported case from the Fifth Circuit interpreting Section 1692e(14) is *Peter v.*

*GC Servs. L.P.*, 310 F.3d 344 (5th Cir. 2002). There, the Court held that the defendant violated

1692e(14) by using the United States Department of Education's name and address in the upper

left hand corner of the envelope in which it sent its collection letter. *Id.* at 352. "By using the

department as the return addressee, GC Services represented the sender of the mail as the

Department of Education, when in fact it was GC Services." *Id.* The Court reasoned:

> Section 1692e was enacted against a backdrop of cases in which courts held that communications designed to create a false sense of urgency were deceptive. *See, e.g.*, *Trans World Accounts, Inc. v. FTC*, 594 F.2d 212, 215 (9th Cir. 1979) (deceptive to make communications appear to be a telegram which heightened sense of urgency). Post–FDCPA courts have read the language of § 1692e as encompassing this concern. *Rosa v. Gaynor*, 784 F. Supp. 1, 5 (D. Conn. 1989) (placing collection letter on attorney's letterhead deceptive where letter is not from attorney because it creates a false sense of urgency). By making the letter

> appear to come from the United States Department of Education, Defendants created a false sense of urgency as to the letter's contents through a practice specifically prohibited in § e(14).

*Id.*

This case presents a much closer call than the names at issue in any of the abovementioned cases. Nevertheless, for the following reasons, the Court concludes that the claim is sufficient to withstand both Defendant's motions to dismiss and for summary judgment. A violation of the FDCPA "need not be deliberate, reckless, or even negligent to trigger liability—it need only be false… In other words, the FDCPA recognizes a strict liability approach." *Barlow v. Safety Nat. Cas. Corp.*, 11-236, 2012 WL 1965417, at *7 (M.D. La. May 31, 2012) (internal quotation marks and citations omitted).

Against this backdrop, it is clear that the use of the name "The SOS Group," even when stated in connection with "fka The HMC Group" violates the statute. Defendant did not register with the Secretary of State to do business in Louisiana as "The SOS Group" until long after Plaintiff had received the collection notices and filed the instant suit. This is not a bare hypertechnical violation; this is a clear violation in the sense that Defendant represented itself as "The SOS Group" when it had not registered the name in the state. While it is true that at all times, Defendant's collection notice provided an accurate address and telephone number, and did in one location state the name "fka The HMC Group," this alone does not eliminate the genuine issue of material fact as to whether the least sophisticated consumer would be deceived or misled as to Defendant's identity based upon the language presented in Defendant's letter. Accordingly, Defendant's motions are denied.

### iii.   Plaintiff's claims under 15 U.S.C. § 1692f

Section 1692f is a catchall provision states that "[a] debt collector may not use unfair or

unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The

subsections provide a nonexclusive list of proscribed conduct under the statute, including "[t]he

collection of any amount (including any interest, fee, charge, or expense incidental to the

principal obligation) unless such amount is expressly authorized by the agreement creating the

debt or permitted by law." 15 U.S.C. § 1692f(1). In the context of convenience fees, the only

relevant inquiry under Section 1692f(1) is whether the amount collected (or attempted to be

collected) was expressly authorized by law or by the contract creating the debt; this inquiry does

not hinge upon the comprehension of the least sophisticated consumer. *See Thomas*, 233 F. Supp.

3d at 675 (citing *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011);

*Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 269–70 (3d Cir. 2013)).

Although the catchall provision of 1692f specifically notes that both actual collection and

collection attempts are proscribed by statute, subsection 1692f(1) refers only to the collection of

any amounts not authorized by contract or by law. *See* 15 U.S.C. §§ 1692f and f(1). However,

the Court finds that the catchall provision is intended to encompass the nonexclusive list of

enumerated offenses in its subsections, and that the "attempt" language of 1692f also applies to

1692f(1). Thus, Defendant's motion regarding this subsection is denied. This conclusion is

consistent with jurisprudence addressing this exact issue. *See*, *e.g.*, *Diaz v. Kubler Corp.*, 785

F.3d 1326, 1328 (9th Cir. 2015) ("[T]he [FDCPA] prohibits debt collectors from trying to collect

any amount that is not 'expressly authorized by the agreement creating the debt or permitted by

law.' 15 U.S.C. § 1692f(1)."); *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d

939, 949 (9th Cir. 2011) ("Section 1692f(1) prohibits the use of 'unfair or unconscionable means

to collect or attempt to collect any debt[.]'"); *Miller v. Wilpoff & Abramson, L.L.P.*, 321 F.3d

292, 308 (2d Cir. 2003) ("plaintiff's cause of action under § 1692f(1) requires a showing that

defendants attempted to collect an amount not expressly permitted either by the agreement creating the debt or by law."); *Thomas*, 232 F. Supp. 3d at 676—77 ("Section 1692f(1) is one of a number of nonexclusive examples of conduct that violates the more general proscription of 1692f, which outlaws attempts."); *Shami*, 914 F. Supp. 2d at 357 ("The fact that subsection (1) of § 1692f does not specify that it includes both collections of and *attempts* to collect unauthorized incidental fees does not limit the general provision of the statute that includes attempts to collect. Courts in this circuit and others have continued to resolve cases involving § 1692f(1) where no actual collection appears to have taken place, instead focusing on the communication seeking payment itself."); *B-Real, LLC v. Rogers*, 405 B.R. 428, 433 (M.D. La. 2009) ("Section 1692f(1) prohibits a debt collector from seeking to collect on any amount 'unless…permitted by law.'"); *McAdams v. Citifinancial Mortg. Co., Inc. of New York*, 06-27 and 06-636, 2008 WL 577559, at *2 n.6 (M.D. La. Mar. 3, 2008) (reading Section 1692f and 1692f(1) in tandem to apply the "attempt" language of 1692f to 1692f(1)); *Jackson v. Adcock*, 03-3369, 2004 WL 1900484, at *5 n.27 (E.D. La. Aug. 23 2004) (same).

### 1. Counts Five and Six: 15 U.S.C. § 1692f and 15 U.S.C. § 1692f(1)

Under Section 1692f(1), a debt collector may not use unfair or unconscionable means to collect or attempt to collect "any amount (including interest, *fee*, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1) (emphasis added). As discussed above in connection with Plaintiff's claim under Section 1692e(2)(B), the convenience fee at issue here was not expressly authorized by the contract creating the debt or by Louisiana law.

Consistent with jurisprudence interpreting both provisions, a convenience fee that

supports a claim under Section 1692e(2)(B) "naturally supports a claim under Section 1692[f(1)] as well." *Thomas*, 232 F. Supp. 3d at 679 (citing *Quinteros*, 999 F. Supp. 2d at 440; *Shami v. Nat'l Enter. Sys.*, 09-722, 2010 WL 3824151, at *4 (E.D.N.Y. Sept. 23, 2010)("if it is determined that the Collection Letter violates § 1692f(1) by representing that the transaction fees are permissible[,] Defendant would also be in violation of § 1692e(2)"); *Wittman v. CB1, Inc.*, 15-105, 2016 WL 3093427, at *4 (D. Mont. June 1, 2016) ("Plaintiffs concede that [their 1692e(2)] claim depends on the survival of Plaintiffs['] section 1692f(1) claim."); *Acosta v. Credit Bureau of Napa Cty.*, No. 14 C 8198, 2015 WL 1943244, at *4 (N.D. Ill. Apr. 29, 2015) ("If the debt collection letter violates Section 1692f(1) by representing that the processing fee is permissible, then Defendant also would be in violation of Section 1692e.").

Accordingly, because the Court found Plaintiff has stated a valid cause of action that withstands both the 12(b)(6) and Rule 56 motions with respect to her Section 1692e(2)(B) claim arising out of the convenience fees, Defendant's motions insofar as they relate to Plaintiff's Section 1692f and 1692f(1) claim must necessarily be denied.

## IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion to Dismiss is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**;

**IT IS FURTHER ORDERED** that with respect to Plaintiff's claims under 15 U.S.C. § 1692e(2)(B), the motion is **GRANTED** with respect to the licensing and registration claim and DENED with respect to the convenience fee claim;

**IT IS FURTHER ORDERED** that with respect to Plaintiff's claim under 15 U.S.C. §

1692e(5), the motion is **GRANTED**;

**IT IS FURTHER ORDERED** that with respect to Plaintiff's claim under 15 U.S.C. § 1692e(10), the motion is **DENIED**;

**IT IS FURTHER ORDERED** that with respect to Plaintiff's claim under 15 U.S.C. § 1692e(14), the motion is **DENIED**;

**IT IS FURTHER ORDERED** that with respect to Plaintiff's claim under 15 U.S.C. § 1692f, the motion is **DENIED**;

**IT IS FURTHER ORDERED** that with respect to Plaintiff's claim under 15 U.S.C. § 1692f(1), the motion is **DENIED**.

Signed in Baton Rouge, Louisiana, on <u>August 28, 2017</u>.


_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**